**PORZIO BROMBERG & NEWMAN P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
Attorneys Appearing: Warren J. Martin Jr. (WM-0487)
Brett S. Moore (BM-0014)

*Counsel for the Official Committee of Unsecured Creditors*
*of St. Mary's Hospital, Passaic, N.J.*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ST. MARY'S HOSPITAL, PASSAIC, N.J.,<br><br>Debtor. | Chapter 11<br><br>Honorable Morris Stern<br><br>Case No. 09-15619 (MS)<br><br>Hearing Date: October 22, 2009 at 1:00 p.m. |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ST. MARY'S HOSPITAL, PASSAIC, N.J. TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING DEBTOR'S EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO**

TO:    THE HONORABLE MORRIS STERN
       UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Unsecured Creditors (the "Committee") of St. Mary's Hospital, Passaic, N.J. (the "Debtor"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Debtor's Motion for entry of an Order Pursuant to 11 U.S.C. § 1121(d) Further Extending Debtor's Exclusive Periods Within Which To File A Chapter 11 Plan and Solicit Acceptances Thereto (the "Second Extension Motion"), and respectfully states as follows:

1317690

## RELEVANT BACKGROUND

1. On March 9, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"). As of the date of this filing, the Debtor remains in possession of its assets and manages its business as debtor-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On March 24, 2008, the Office of the United States Trustee for the District of New Jersey (the "Trustee") formed the Committee[1] pursuant to Section 1102 of the Bankruptcy Code to represent the interests of the unsecured creditors of St. Mary's.

3. On June 19, 2009, the Debtor filed its first motion requesting an extension of the Debtor's exclusive periods (i) to file a chapter 11 plan or plans of reorganization for approximately ninety (90) days, through and including October 7, 2009 and (ii) to solicit acceptances of such plan(s) for approximately ninety (90) days, through and including December 7, 2009 (the "First Extension Motion").

4. On June 24, 2009, the Committee filed a limited objection to the First Extension Motion and asserted that a thirty (30) day extension was more appropriate because the longer that this Debtor remains in a Chapter 11 proceeding the more difficult it will be for a successful reorganization or to maximize value to the estate through a sale process.

5. At a hearing held on July 1, 2009 the Court granted the Debtor's First Extension Motion.

---

[1] The Committee is currently comprised of the following creditors: Western Reserve MedTec Services; JNESO – District Council 1 IUOE-AFL-CIO; Armanti Financial Services, LLC; Navix Diagnostix, Inc.; Roche Diagnostics Corporation; and Bergen Community Regional Blood Center.

6. The Debtor filed the Second Extension Motion on October 6, 2009 requesting a further extension of the Debtor's exclusive periods (i) to file a chapter 11 plan or plans of reorganization for approximately thirty (30) days, through and including November 6, 2009 and (ii) to solicit acceptances of such plan(s) for approximately thirty (30) days, through and including January 6, 2010.

7. In the spirit of cooperation, and the Debtor requested, and the Committee consented, to a two (2) week extension of the Debtor's exclusive period to file a plan through October 21, 2009. The hope and expectation was that the two (2) week extension would be sufficient for the Debtor to resolve some final outstanding issues and have a plan on file by October 21, 2009.

8. The Committee still firmly believes that time is of the essence, and it is critical that the Debtor exit bankruptcy (either through reorganization or a sale) as soon as possible. While the Committee has had some positive substantive discussions with the Debtor about its proposed plan of reorganization, and counsel for the Committee has received a draft of the Debtor's plan, the Committee also is in discussions with other third-parties who would like to present their-own plan proposals.

9. The Committee has consistently taken the position that to the extent that the Debtor proposes a stand-alone plan of reorganization, it must do so in a manner that the Debtor's plan is subject to a market test with others having the ability to also present proposals. The Debtor has agreed to this approach, and thus, by terminating exclusivity now, other parties will have their opportunity, along with the Debtor, to present a plan of reorganization. Accordingly, the Committee respectfully requests that the Court deny the Second Extension Motion.

## **OBJECTION**

**1.    The Legislative History Behind section 1121 of the Bankruptcy Code.**

10.    As noted by the Debtor, section 1121(d) allows the Bankruptcy Court to extend the Debtor's exclusive periods for cause shown. However, in evaluating whether the Debtor has demonstrated such cause, courts "should be mindful of the legislative goal behind § 1121." *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 373 (5th Cir. 1987). That court cited the relevant House Report:

> Proposed chapter 11 recognizes the need for the debtor to remain in control to some degree, or else debtors will avoid the reorganization provisions in the bill until it would be too late for them to be an effective remedy. At the same time, the bill recognizes the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company. The bill gives the debtor an exclusive right to propose a plan for 120 days. In most cases, 120 days will give the debtor adequate time to negotiate a settlement, without unduly delaying creditors. The court is given the power, though, to increase or reduce the 120-day period depending on the circumstances of the case. For example, if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement. If, on the other hand, a debtor delayed in arriving at an agreement, the court could shorten the period and permit creditors to formulate and propose a reorganization plan. Again, the bill allows the flexibility for individual cases that is unavailable today.

*Id.* citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 174. Accordingly, it is clear that Congress intended to give a debtor a limited exclusive period to file a plan, but also recognized the important role that creditors are to play in the plan process and that creditors should be given the opportunity to formulate their own reorganization plan. *See also In re Grossinger's Associates*, 116 B.R. 34 (Bankr. S.D.N.Y. 1990) (stating "[t]he goal reflected in 11 U.S.C. § 1121 in allowing other interested parties to file a plan of reorganization after the expiration of the debtor's exclusivity periods, is predicated on the theory that there should be a relative balance of negotiating strength between debtors and creditors during the reorganization process").

11. The *Timbers* court also emphasized the important role that courts have in monitoring the progress of Chapter 11 cases:

> Early and ongoing judicial management of Chapter 11 cases is essential if the Chapter 11 process is to survive and if the goals of reorganizability on the one hand, and creditor protection, on the other, are to be achieved. In almost all cases the key to avoiding excessive administrative costs, which are borne by the unsecured creditors, as well as excessive interest expense, which is borne by all creditors, is early and stringent judicial management of the case.

*Timbers*, 808 F.2d at 373.

12. At this point, the Debtor has had not only its initial 120 day exclusivity period, but also an additional 60 day exclusive period to file a plan of reorganization. Given that other parties remain interested in possibly purchasing the Debtor's assets, and terminating exclusivity will not preclude the Debtor from filing its own reorganization plan, the time has come to let interested parties submit their proposals which will only help move this Debtor toward an exit from bankruptcy.

### 2. The Debtor Is Not Precluded From Filing A Plan Even If Exclusivity Expires.

13. While an exclusive period provides a debtor with the opportunity to file a plan without the potential of dealing with competing plans, there is nothing precluding a Debtor from filing a plan of reorganization even if the exclusivity period expires. In denying a debtor's motion to extend its exclusivity period, one court explained:

> In reaching this conclusion, the court notes that its decision does not sound a death knell for debtor's reorganization 'Denying such a motion only affords creditors their right to file the plan; there is no negative effect upon the debtor's co-existing right to file its plan.' The debtor remains free to take as long as it wishes or feels appropriate to develop and propose its own plan. 'The risk is, of course, that while it is developing its plan, another party in interest will file a plan. However, that is as Congress intended.' Even if… another party would file a plan, that plan will be subject to the same procedures and standards governing confirmation that would apply to any plan debtor might wish to propose.

*In re All Seasons Industries, Inc.*, 121 B.R. 1002, 1005 (Bankr. N.D. Ind. 1990) (internal citation omitted).

14. To the extent that the Debtor believes that terminating exclusivity will present chaos, that concern can easily be dealt with by setting a common schedule by which the Debtor, and/or any competing party, must file their plan proposals, solicit acceptance, etc.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court deny the Second Extension Motion.

Dated: October 20, 2009　　　　　　　　　　　Respectfully submitted,

**PORZIO BROMBERG & NEWMAN P.C.**

By: _____/s/ Brett S. Moore_____
　　　Brett S. Moore

Counsel to the Official Committee of Unsecured Creditors of St. Mary's Hospital, Passaic, NJ