**PORZIO BROMBERG & NEWMAN P.C.**
100 Southgate Parkway
Morristown, NJ 07962-1997
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin Jr. (WM-0487)
Brett S. Moore (BM-0014)

*Counsel for the Official Committee of Unsecured Creditors
of St. Mary's Hospital, Passaic, N.J.*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ST. MARY'S HOSPITAL,<br>PASSAIC, NJ<br><br>Debtor. | Chapter 11<br><br>Case No. 09-15619 (MS)<br><br>Hearing Date: December 18, 2009 at noon. |

**EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER (I) ADJOURNING THE HEARING TO APPROVE THE DEBTOR'S DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. §§ 105(a) AND 1125, AND (II) TERMINATING THE DEBTOR'S EXCLUSIVITY PURSUANT TO 11 U.S.C. §§ 105(a) AND 1121(d)**

The Official Committee of Unsecured Creditors (the "Committee") of St. Mary's Hospital, Passaic, N.J. ("St. Mary's" or the "Debtor"), by and through its counsel, Porzio, Bromberg & Newman, P.C. ("Porzio"), hereby submits this emergency motion (the "Motion") for an order (i) adjourning the hearing to approve the Debtor's Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code (the "Disclosure Statement") For The Debtor's Plan Of Reorganization of St. Mary's Hospital, Passaic, N.J. (the "Plan") pursuant to 11 U.S.C. §§ 105(a) and 1125, and (ii) terminating the period during which the Debtor has the exclusive right to file a plan of reorganization (the "Exclusive Filing Period") and similarly terminating the period during which the Debtor has the exclusive right to solicit acceptances thereof (the "Exclusive

22769/2
1328631

Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods") pursuant to 11 U.S.C. §§ 105(a) and 1121(d). In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtor has requested that the Court approve the Disclosure Statement at a hearing currently scheduled for December 18, 2009 (the "Disclosure Statement Hearing"). The primary reason that the Committee opposes approval of the Disclosure Statement is that the Plan it describes is facially inferior to an alternate plan proposal that has been presented to the Committee by Saber Health Care Advisors, LLC ("Saber"). Although Saber's proposal envisions superior returns for all creditors, the Debtor intends to go forward with its own stand-alone reorganization Plan. While the Committee is sensitive to the fact that all creditor constituencies wish to see the Debtor exit bankruptcy in a timely manner, given the vastly superior proposal submitted by Saber (as compared to the Debtor's Plan), the most prudent course of action at this time to adjourn the Disclosure Statement Hearing so that all parties can more fully consider Saber's proposal, and to provide Saber with a limited window within which to finalize its due diligence.

2. Adjourning the Disclosure Statement Hearing is appropriate for several reasons. First, an adjournment will give all parties more time to consider the Saber proposal, which was only submitted to the Committee and New Jersey Health Care Facilities Financing Association ("NJHCFFA") on December 11, 2009. Second, Saber has a list of very specific items that it needs to complete its due diligence, and believes it can finalize any remaining due diligence within twenty (20) days of its receipt of the required information. Furthermore, any competing plan and disclosure statement will be filed by no later than January 31, 2010. Accordingly, any delay in this case will be minimal.

3. Saber's proposal appears to provide vastly better treatment for all of the Debtor's stakeholders as compared to the Plan. According to the Disclosure Statement, unsecured creditors will receive only a $1 million promissory note and net avoidance action

2

proceeds. Approximately $30 million in unsecured claims have been filed in this case. The Saber proposal, a term sheet of which will be filed in support of the Motion within twenty-four (24) hours, provides a substantial increased return for not only unsecured creditors, but all of the Debtor's stakeholders.

4. Admittedly, the Saber Proposal has only recently been provided to the Committee and NJHCFFA, and as of the date hereof, has not been provided to the Debtor. However, any analysis that the Debtor may have done in the past must in any event be revisited in light of the substantial offer presented by Saber. Accordingly, the Disclosure Statement Hearing should be postponed to allow time for the Debtor to review the Saber Proposal and either decide to support it or explain to the Committee why they are unwilling to support it. The Committee is entitled to have time to discuss the Saber Proposal with the Debtor and HCFFA, and consider the merits of any decision by the Debtor to support one plan over another. If the Debtor refuses to properly consider the Saber Proposal, or even provide guidance on what steps Saber needs to take in order to obtain the Debtor's support, such refusal may well constitute a breach of the Debtor's fiduciary duty to its creditors. Such a breach would render the Debtor's Plan non-confirmable, and would make consideration of the Disclosure Statement a waste of judicial resources. Until this issue is fully addressed by the Debtor and the Committee, it is premature to consider the Disclosure Statement.

5. A further ground for postponing the Disclosure Statement Hearing is that the Saber Proposal will be moot if the Disclosure Statement is approved and the Debtor commences the solicitation of its Plan. Thus, approval of the Disclosure Statement -- even if confirmation of the Plan is denied -- will deprive all creditors the opportunity to realize the greater value that may be provided in Saber's proposal.

6. For these reasons, and as more fully discussed herein, the Committee submits that the Disclosure Statement Hearing should be adjourned for a period of six to eight weeks to provide Saber with a limited time-frame to complete its due diligence, and for a competing plan to be filed by January 31, 2010.

3

7. Also, while the Debtor has publicly welcomed alternative proposals from third-parties, and has stated that it will file a Plan that allows for competing bids, it has failed to do so. Thus, the Committee is skeptical of the willingness of the Debtor to fairly evaluate Saber's proposal in light of its own reorganization Plan. Therefore, in addition to requesting an adjournment of the Disclosure Statement Hearing, the Committee requests that the Court terminate the Exclusive Periods, so that the terms of the Saber proposal may be implemented through a Committee sponsored plan and disclosure statement.

### RELEVANT BACKGROUND

**A.    In General.**

8. On March 9, 2009 (the "Petition Date"), St. Mary's filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

9. The Debtor has remained in possession of its assets and continued management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

10. No trustee or examiner has been appointed in the Debtor' bankruptcy cases.

11. On March 24, 2008, the Office of the United States Trustee for the District of New Jersey (the "Trustee") formed the Committee[1] pursuant to Section 1102 of the Bankruptcy Code to represent the interests of the unsecured creditors of the Debtor. That same day, the Committee selected Porzio as its proposed counsel.

### JURISDICTION AND VENUE

12. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the

---

[1] The Committee is currently comprised of the following creditors: Western Reserve MedTec Services; JNESO – District Council 1 IUOE-AFL-CIO; Armanti Financial Services, LLC; Navix Diagnostix, Inc.; Roche Diagnostics Corporation; and Bergen Community Regional Blood Center.

4

requested adjournment of the Disclosure Statement Hearing are 11 U.S.C. §§ 105(a) and 1125. The statutory predicates for terminating the Debtor' Exclusive Periods are 11 U.S.C. §§ 105(a) and 1121(d). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## RELIEF REQUESTED

13. By this Motion, the Committee seeks to adjourn the Disclosure Statement Hearing for a period of six to eight weeks. This adjournment will enable the Debtor to consider whether it will support the Saber Proposal, and allow Saber to complete its final due diligence. The Committee also requests that the Court terminate the Exclusive Periods so that a competing plan and disclosure statement may be filed by January 31, 2010.

## BASIS FOR RELIEF REQUESTED

**I.   The Disclosure Statement Hearing Should Be Adjourned To Permit Additional Time For The Parties To Consider Saber's Proposal And Allow Saber To Finalize Its Due Diligence.**

14. A hearing on the Disclosure Statement at this time would be premature. One reason is that the Saber proposal was only submitted to the Committee and NJHCFFA on Friday, December 11, 2009. The Committee and NJHCFFA immediately took actions to coordinate a meeting with the principals of Saber's proposal and requested additional information from Saber to evaluate their propsal. Saber responded in very quick fashion, made themselves available for a meeting on Monday, December 14, 2009 with the Committee and NJHCFFA, and provided answers to the information requested by the Committee. Based on the information provided to the Committee, and the substantial nature of Saber's proposal, including its apparent viability, the Committee supports giving Saber additional time to finalize its due diligence so that Saber's proposal may be presented to creditors in an alternative plan. Also, an adjournment will provide the Debtor with the opportunity to more fully consider Saber's proposal in a timely manner, as well as provide NJHCFFA with an opportunity to more fully evalaluate Saber's proposal with various State departments.

15. While the principals involved in formulating Saber's proposal have

5

performed substantial due diligence to date, there is some additional limited non-public information that Saber requires in order to finalize its due diligence. Saber believes that it can complete its due diligence within twenty (20) days of its receipt of such information from the Debtor. Thus, while there may be a slight delay in this case if the Disclosure Statement Hearing is adjourned, the delay will be limited and will not be significant in terms of the grand scheme of this case. Furthermore, to the extent that the Debtor cooperates with Saber's limited due diligence requsts and does not frustrate the process, there is no reason for the administrative fees to materially increase during this limited adjournment period. Further, Saber has indicated a willingness to make a portion of its deposit nonrefundable in order to cover administrative costs during the slight delay if the Disclosure Statement Hearing is adjourned and the Exclusive Periods are terminated.

16. Given the clear upside in Saber's proposal (as compared to the Debtor's Plan), the slight delay that will be necessary to permit Saber to finalize its limited due diligence is well justified. If an adjournment is not granted, and the Disclosure Statement is approved, the Debtor will commence solicitation of the Plan and Saber's proposal will become moot. Thus, without an adjournment, substantial value for creditors may be lost.

17. Accordingly, the Disclosure Statement Hearing should be adjourned to provide parties with additional time to evaluate Saber's proposal, and to permit Saber some limited time to complete is limited due diligence.

**II.    The Exclusive Periods Should Be Terminated.**

18. Section 1121(d) of the Bankruptcy Code provides that the Court may terminate the Exclusive Periods:

> . . . on request of a party in interest . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

19. Although "cause" justifying the termination of a debtor's exclusivity is not

defined in the Bankruptcy Code, courts generally look at the totality of the circumstances and consider a number of competing factors, each of which may constitute sufficient grounds for reducing or extending the periods. *See, e.g., In re Adelphia Communications Corp.*, 352 B.R. 578 (Bankr. S.D.N.Y. 2006); *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *In re Express One Int'l*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). Some of the factors courts generally consider include:

1. the size and complexity of the case;

2. the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

3. the existence of good faith progress towards reorganization;

4. the fact that the debtor is paying its bills as they become due;

5. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

6. whether the debtor has made progress in negotiations with its creditors;

7. the amount of time that has elapsed in the case;

8. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

9. whether an unresolved contingency exists.

*In re Dow Corning Corp.*, 208 B.R. at 664-65.

20. Section 1121(d)(1) "grants great latitude to the Bankruptcy Judge in deciding, on a case-specific basis, whether to modify the exclusivity period on a showing of 'cause.'" *Geriatrics Nursing Home v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home)*, 187 B.R. 128, 132 (D.N.J. 1995) (*citing In re Kerns*, 111 B.R. 777, 781 (S.D. Ind. 1990); *In re Sharon Steele Corp.*, 78 B. R. 762, 763 (Bankr. W.D. Pa. 1987)).

21. Courts have noted that "the primary consideration in determining whether to terminate the debtor's exclusivity is whether its termination will move the case forward, and

that this 'is a practical call that can override a mere toting up of the factors.'" *Adelphia Communications Corp.*, 352 B.R. at 590 (*quoting Dow Corning*, 208 B.R. at 670). The *Adelphia* court went on to to note that the "test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case. Certainly practical considerations, or other considerations in the interests of justice, could override, in certain cases, the result after analysis of the nine factors." *Id*. at 590 (*citing Dow Corning*, 208 B.R. at 670).

          A.    **Sufficient Cause Exists To Terminate The Exclusive Periods.**

          22.    Cause exists to terminate the Exclusive Periods. The reason is that terminating the Exclusive Periods will allow the Committee to present Saber's proposal for consideration by all creditors. As noted above, Saber's proposal not only provides a vastly superior return for unsecured creditors as compared to the Plan, it also provides superior return for NJHCFFA and the Debtor's other creditors. A supplement to the Motion will be filed within twenty-four (24) hours that will provide a term-sheet outlining the proposed treatment to the various creditor constitutencies.

          23.    Given the stark differences between the treatment of creditors under the Plan and Saber's proposal, the Committee should have the opportunity to present a plan to creditors pursuant to a Court-approved disclosure statement. Given that the Debtor has proposed its own reorganization Plan, and has not provided a mechanism to permit alternative proposals to be presented to creditors, the Committee is not confident that the Debtor will ultimately present Saber's proposal to creditors. In these circumstances, only the termination of the Exclusive Periods by the Court will allow Saber's proposal to be fully considered by all creditors in these cases.

          24.    Although the Debtor is not seeking to extend the Exclusive Periods, allowing the Exclusive Periods to remain in place will have the same overall effect of an extension -- creditors will have no choice over how their claims will be treated. Currently, the Exclusive Periods prevent consideration of Saber's proposal (or any other competing proposal)

and thus, creditors are left with no alternatives to the Plan. Given the interest by other parties, and the substantiall offer made by Saber, sufficent cause exists to termine the Exclusivity Periods at this time. If exclusivity is terminated, the Court can schedule: (i) a deadline by which any alternative plans must be filed, (ii) a joint disclosure statement hearing sometime in February, and (iii) a confirmation hearing in March, 2010.

### B.    Terminating Exclusivity Will Move These Cases Forward.

25.    Courts have consistently held that "when determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward." *Dow Corning*, 208 B.R. at 670; *see also Adelphia Communications Corp.*, 352 B.R. at 590. The *Adelphia* Court clarified the *Dow Corning* court's holding, stating that the "test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case." *Adelphia Communications Corp.*, 352 B.R. at 590.

26.    Here, terminating the Exclusive Periods to allow consideration of the Saber Proposal as an alternative plan will move the case forward in a material way that will provide an opportunity for a substantially increased return for creditors. If the Exclusive Periods remain intact, creditors will not have the benefit of reviewing more than one plan proposal and selecting the one proposal that provides the greatest value for their claims. While the Debtor has been provided a substantial time-period to formulate its own Plan, Saber's proposal has only recently been presented to the Committee. Given the potential return to creditors offered in Saber's proposal, terminating the Exclusive Periods now while Saber completes its due dilgence will move the case forward and ensure that a competing plan based on Saber's proposal may be filed in January without the need to return to Court.

27.    Further, terminating the Exclusive Periods at this juncture does not sound a "death knell" for the Debtor's reorganization; instead, it "affords creditors their right to file the plan; there is no negative effect upon the debtor's co-existing right to file its plan." *Matter of All Seasons Industries, Inc.*, 121 B.R. 1002, 1005 (Bankr. N.D. Ind. 1990). Allowing creditors to

consider competing proposals will simply ensure that the highest and best return is obtained for creditors, and creditors will still have the opportunity to vote for the Plan to the extent it represents the best altnernative.

      **C.    Practicality And Other Considerations In The Interests of Justice Establish Cause Sufficient to Terminate Exclusivity.**

28.    Beyond the standard analysis of the factors discussed above, ". . . practical considerations, or other considerations in the interests of justice, could override, in certain cases, the result after analysis of the nine [*Dow*] factors." *Adelphia Communications Corp.*, 352 B.R. at 590 (*citing Dow Corning*, 208 B.R. at 670). Accordingly, even if the Court determines that an analysis of the relevant factors does not establish cause, the Court may still terminate the Exclusive Periods in the interests of practicality and justice.

29.    Justice would be served by terminating the Exclusive Periods because the Debtor has advised the Court, the Committee and interested third-parties that it would fairly consider alternative proposals and file a plan that permitted alternative proposals to be presented to creditors. Although the Debtor has professed to give fair consideration to alternative proposals made by third-parties, it has chosen to not file a Plan that allows for competing bids. As this Court is aware, the Committee has always taken the position in this case that to the extent that the Debtor intends to file a stand-alone reorganization plan, it needed to include a mechanism that would allow for a market test. In fact, at the hearing held on October 29, 2009, the Court asked the parties about the fact that the Debtor had always said it would file a plan that enabled competition from third parties:

> The Court:  … But, Mr. Moore, I assume the Committee is satisfied that the mechanics of the proposed plan would be sufficient to develop the necessary competition, or am I wrong?
> Mr. Moore:  Your Honor, the Committee has taken the position since the beginning of this case to the extent there's going to be a standalone reorganization, we want a market test with other parties having the opportunity to come in and make alternative proposals.
> The Court:  I know you took that position.
> Mr. Moore:  The plan as drafted that I saw which is again a draft form with holes to fill in, didn't envision that but I'm not saying that was what we are

10

          signing off on.  Mr. Malone has consistently said through this case that he would include that type of provision.  So we're still negotiating – I haven't given my specific comments to the plan at this point on behalf of the committee.  But its certainly my intention … that we wouldn't consent to a plan that didn't include that type of what I'll call a <u>North LaSalle</u> provision.  And I'm comfortable that it will be in there because that's been the position of the debtor the entire case.

The Court:    And that was my – the first statement out of the box was Mr. Malone's statement that a <u>North LaSalle</u> plan might well be developed.  Am I correct, Mr. Malone?

Mr. Malone:  Your Honor, yes, but I mean as part and parcel of any <u>North LaSalle</u> plan so we're not getting ourselves into the emperor has no clothes is that obviously, and its probably one of the things that is in the next draft is the definition of qualified bidder…

*See* Transcript of the hearing held on October 29, 2009 at pp. 37:6-25; 38:1-10 attached hereto as **Exhibit "A"**.

      30.    In fact, prior to the filing of the Plan, counsel for the Committee provided the Debtor's counsel with a draft <u>North LaSalle</u> provision that would have enabled competing bids to be presented.  However, the Debtor has taken the position that it does not need to include a <u>North LaSalle</u> provision because: (i) the Debtor believes its Plan is superior to the alternative proposals that is has reviewed; and (ii) it believes it may not be required to comply with <u>North LaSalle</u> given that it operates as a non-profit entity, and therefore, has no equity.  However, the Debtor should not be permitted to individually determine whether an alternative proposal, such as Saber's proposal, should be presented to creditors.  Given that the Debtor has not provided a <u>North LaSalle</u> provision in the Plan, the best alternative is to terminate exclusivity and allow the Committee to present an alternative plan based on the terms of Saber's proposal, and that is subject to higher and better offers.

      31.    Accordingly, in the interests of all creditor constituencies, the Committee respectfully submits that the Exclusive Periods should be terminated.

## **CONCLUSION**

      32.    For the reasons set forth herein, the Committee respectfully requests that

the Court (i) adjourn the Disclosure Statement Hearing for a period of six to eight weeks; (ii) terminate the Debtor' Exclusive Periods; and, (iii) grant the Committee such other and further relief as the Court deems just.

Respectfully submitted,

**PORZIO BROMBERG & NEWMAN P.C.**
Warren J. Martin Jr.
Brett S. Moore
100 Southgate Parkway
Morristown, NJ 07068
(973) 538-4006 (Telephone)
(973) 538-5146 (Facsimile)

*Counsel for the Official Committee of Unsecured Creditors*

By: /s/ Brett S. Moore
   Brett S. Moore

Dated: December 15, 2009