**DRINKER BIDDLE & REATH LLP**
A Delaware Limited Liability Partnership
500 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000
Attorneys for St. Mary's Hospital, Passaic, N.J.
Debtor and Debtor-in-Possession
Robert K. Malone (RM 1098)
Frank F. Velocci (FV 2185)

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In the Matter of:<br><br>**ST. MARY'S HOSPITAL, PASSAIC, N.J.**<br><br>Debtor-in-Possession. | (Hon. Morris Stern)<br><br>Chapter 11<br><br>Case No. 09-15619 (MS) |

## NOTICE OF FILING OF TERM SHEET WITH
## HEALTHCARE FINANCE GROUP, INC.

Attached hereto please find the Term Sheet with Healthcare Finance Group, Inc., which is Exhibit F to the Disclosure Statement.

                                                          Respectfully submitted,

                                                          DRINKER BIDDLE & REATH, LLP
                                                          A Delaware Limited Liability Partnership
                                                          500 Campus Drive
                                                          Florham Park, New Jersey 07932-1047
                                                          Attorneys to St. Mary's Hospital, Passaic, N.J.
                                                          Debtor and Debtor-in-Possession

                                                          By: /s/   Frank F. Velocci
                                                              Frank F. Velocci

Dated: December 17, 2009
       Florham Park, New Jersey



199 Water Street
20th Floor
New York, NY 10038

December 1, 2009

Mr. Michael Sniffen
Chief Executive Officer
St. Mary's Hospital
350 Boulevard
Passaic, NJ 07055

Dear Mr. Sniffen:

I am pleased to set forth below the proposed terms of an Exit Financing facility for St. Mary's Hospital (referred to below, with any and all subsidiaries, as "St. Mary's" or "Provider").

## SUMMARY OF TERMS

| | |
|---|---|
| **GENERAL OVERVIEW:** | The program provides funds to St. Mary's through ongoing funding, on a borrowing base formula basis, of eligible accounts receivable generated by St. Mary's. |
| **TERM SHEET EXPIRATION DATE:** | If not accepted by the Provider this term sheet expires at the close of business on December 4, 2009. The term sheet will expire on December 7, 2009 if Lender (as defined below) has not received the Expense Advance (defined below) by such date. |
| **BORROWER:** | St. Mary's. |
| **LENDER:** | Healthcare Finance Group, Inc., or its assigns. |
| **COMMITTED AMOUNT:** | $20,000,000. |
| **ADVANCE RATE:** | 80% of the collectible value of billed Eligible Receivables aged up to 150 days, subject to due diligence. Unbilled A/R shall be eligible up to 30 days with an advance rate of 75% and advances capped at $1.25MM. |
| **INELIGIBLE COLLECTIONS:** | Upon notification by the Provider (with backup, if required by Lender) all cash collections from ineligible payers received by Lender shall be made available to Provider through a full credit (at 100%) of such amounts, when received, to the borrowing base availability of Provider. If A/R from Medicare and/or Medicaid provide no additional borrowing base availability to Provider due to required borrowing base reserves on such A/R, collections from these payers will be treated as ineligible payer collections, and will be handled as indicated above. |

| | |
|---|---|
| **INTEREST RATE:** | 3-month LIBOR + 8.75%. Upon providing audited financial statements showing a fixed charge coverage of 1.2 times and maintenance of this FCC level plus liquidity of $1MM (half of which shall consist of excess availability), the spread shall drop to 3-month Libor +6.25% |
| **LIBOR FLOOR:** | The rate set for U.S. dollars 3-month LIBOR shall not be less than 3.00%. |
| **MATURITY:** | May 31, 2012 |
| **FACILITY FEE:** | 1.5% of the Committed Amount, 50% payable upon closing, 50% payable on the first anniversary of closing. |
| **EXIT FEE:** | .50% of the Committed Amount, which amount may be applied to the fees in connection with an extension of the existing facility (subject to request of Borrower and approval of Lender). |
| **NON-UTILIZATION FEE:** | 0.25% per annum payable monthly on the difference between the Committed Amount and the average outstanding balance. |
| **COLLATERAL TRACKING FEE:** | Greater of 0.50% per annum payable monthly on the average outstanding balance, and $5,000 per month. |
| **MINIMUM USAGE:** | Borrower agrees to maintain a minimum balance of no less than $5,000,000. |
| **EARLY TERMINATION FEE:** | 2% of the Committed Amount. |
| **INITIAL BORROWING:** | At closing, on the effective date of the Plan (as defined below), St. Mary's will borrow an amount sufficient to repay in full St. Mary's existing DIP financing loan (the "DIP Loan") provided by Healthcare Finance Group, Inc. and its affiliates (collectively, the "DIP Lender") and shall repay the DIP Loan in full. |
| **EXPENSES:** | Provider is responsible for all due diligence and legal expenses of Lender related to this transaction (including attorneys' fees and expenses related to enforcing this provision) whether or not it closes. A $50,000 non-refundable advance (which to the extent unused, may be credited toward the Facility Fee) against expenses (the "Expense Advance") is due and payable following approval thereof by the Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") presiding over St. Mary's chapter 11 case. Not later than 3 business days after signing this letter, Provider shall file a motion with the Bankruptcy Court for approval to pay the Expense Advance. On reasonable request by the Lender, subject to approval by the Bankruptcy Court, St. Mary's shall increase the amount of the Expense Advance on account of Lender's reasonable expenses in documenting the Exit Financing facility which exceed the original amount of the Expense Advance. |
| **CMS AGREEMENT:** | Lender will enter into an agreement with CMS with regard to the treatment of Medicare liabilities satisfactory to Lender, including |

|  |  |
|---|---|
|  | with regard to offset and recoupment rights or Medicare A/R will be fully reserved for in the Borrowing Base. |
| **PLAN:** | St. Mary's chapter 11 plan of reorganization (the "Plan"), the order confirming the Plan, and all documents, agreements, schedules and exhibits related to or entered into or delivered in connection with the Plan shall be acceptable to the Lender, the DIP Lender and the Term Lender (as defined below) in each's sole discretion. Without limitation, the Plan shall provide for the payment in full of the DIP Loan in cash on the effective date of the Plan, shall approve the Exit Financing facility contemplated by this term sheet, shall provide for the payment in full in cash of the $2.75 million pre-petition term loan provided by Healthcare Finance Group, Inc. and its affiliates (the "Term Lender") on the effective date of the Plan (to the extent not previously paid), and shall contain acceptable release and exculpatory provisions in favor of Healthcare Finance Group, Inc. and its affiliates in their capacity as DIP Lender, Term Lender and pre-petition lender to St. Mary's. |
| **COLLATERAL:** | Lender will be granted a perfected first priority lien on all of the St. Mary's accounts receivable, inventory, general intangibles, machinery and equipment and all other assets of St. Mary's (except for the hospital real property), and all proceeds thereof. Lender will be granted a perfected second priority lien on St. Mary's hospital real property, junior only to the lien of NJHCFFA. |
| **LOCK BOXES/COLLECTIONS:** | To be handled the same as in existing transaction |
| **ELIGIBLE RECEIVABLES:** | Same as existing transaction |
| **REPRESENTATIONS AND WARRANTEES:** | Usual and customary, including organization in good standing, validity of agreements, tax status, compliance with law, litigation and Provider's billing and collection policies and procedures. |
| **DUE DILIGENCE:** | Before closing, a review of the Provider's historical receivables performance, its systems, management controls, servicing capabilities, and other matters will be conducted. Pending consummation of the Proposed Transaction, St. Mary's will keep Lender advised with respect to St. Mary's's business activities and financial condition, and will furnish to Lender such information as may be requested. |
| **FINANCIAL COVENANTS:** | To be determined by Lender, in consultation with St. Mary's. |
| **CONFIDENTIALITY:** | The Provider agrees that the terms of this letter are confidential, may not be disclosed by the Provider to any party, and may not be used for any purpose other than the consummation of the transaction outlined herein; provided however, that the Provider may disclose the terms of this letter to the attorneys and professional consultants representing the Provider in this transaction and the Official Committee of Unsecured Creditors |

who agree in advance to the same confidentiality provisions stated herein; provided further that the existence of this term sheet and Lender's willingness to provide exit financing on terms acceptable to Lender may be disclosed by the Provider to the Bankruptcy Court; and provided further that the Provider may disclose this term sheet in connection with the filing of a motion to approve the payment of the Expense Advance and in connection with the filing of the Plan. Lender agrees that it will not disclose Provider's confidential information, except (a) as may be required by law, rule, or regulation (and to the extent legally permissible, it will provide notice to you prior to such disclosure) and (b) to its affiliates' officers, directors, employees, attorneys, agents, potential co-lenders or co-investors, participants, assignees, and professional consultants in connection with this transaction.

**GOVERNING LAW, WAIVER OF JURY TRIAL, JURISDICTION:**

In connection with the transaction outlined herein, all parties, as of the date hereof, agree: (i) that the law of the State of New York governs without regard to any conflicts of law principles; (ii) to the waiver of a trial by jury; and (iii) to the jurisdiction of the state and federal courts located in New York County, New York City, New York.

In addition to the conditions noted above, Lender's consummation of this financing will be subject to (a) Provider and Lender reaching final agreement on the terms, conditions and other provisions to be included in the supporting documentation for the financing, (b) authorization of the transaction by the Board of Trustees of Provider and the Credit Committee of Lender, (c) liquidity, capitalization and projections of Borrower acceptable to Lender at closing, (d) a hot backup servicing arrangement in place to the satisfaction of Lender and (e) the satisfaction of Lender and its counsel with the documentation, proceedings, and legal opinions incident to the proposed transaction.

If the terms and conditions set forth above are acceptable to you, please so indicate by signing the enclosed copy of this letter in the place provided and returning the same to me.

Sincerely,

David Hyams
Chief Credit Officer

Accepted and agreed to:

By: _____ on this date: _____.
Name:
Title:

**WIRE TRANSFER INSTRUCTIONS**

| | |
|---|---|
| Bank Name: | JP Morgan Chase |
| ABA: | 021000021 |
| Account #: | 6302088541 |
| Account Name: | Healthcare Finance Group, Inc. |
| Reference: | St. Mary's |