## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | ) | (Hon. Morris Stern) |
| | ) | |
| **ST. MARY'S HOSPITAL, PASSAIC, N.J.,** | ) | Chapter 11 |
| | ) | |
| Debtor-in-Possession. | ) | Case No. 09-15619 (MS) |
| | ) | |
| | ) | |

### FIRST AMENDED PLAN OF REORGANIZATION OF ST. MARY'S HOSPITAL, PASSAIC, N.J., UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Robert K. Malone (RM 1098)
Michael P. Pompeo (MP 3286)
Frank F. Velocci (FV 2185)
Marita E. Cammarano (MC 1630)
Drinker Biddle & Reath LLP
500 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 360-1100
Facsimile: (973) 360-9831

Counsel for Debtor and Debtor-in-Possession

Pursuant to chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101-1330, St. Mary's Hospital, Passaic, N.J., debtor and debtor-in-possession in the above-captioned chapter 11 case, hereby respectfully proposes the following First Amended Plan of Reorganization.

# TABLE OF CONTENTS

**Page**

ARTICLE I - DEFINED TERMS, RULES OF INTERPRETATION,
    COMPUTATION OF TIME AND GOVERNING LAW ..................................... 2
    A.    Rules of Interpretation, Computation of Time and Governing Law .......... 2
    B.    Defined Terms .................................................................................. 3

ARTICLE II - ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES AND
    PRIORITY TAX CLAIMS ..................................................................... 22
    A.    Introduction ...................................................................................... 22
    B.    Administrative Claims (Other Than Professional Fee Claims) ............... 22
    C.    Professional Fee Claims ..................................................................... 23
    D.    Priority Tax Claims ........................................................................... 24

ARTICLE III - CLASSIFICATION AND TREATMENT OF CLAIMS ...................... 25
    A.    Summary ........................................................................................... 25

ARTICLE IV - ACCEPTANCE OR REJECTION OF THE PLAN ........................... 28
    A.    Voting Classes .................................................................................. 28
    B.    Acceptance by Impaired Classes ........................................................ 29
    C.    Presumed Acceptance/Rejection of Plan .............................................. 29
    D.    Nonconsensual Confirmation ............................................................. 29
    E.    How to Vote ..................................................................................... 30

ARTICLE V - EFFECT OF CONSUMMATION ................................................... 31
    A.    Vesting of Cash and Certain Assets in the Creditor Trust ...................... 31
    B.    Establishment of the Creditor Trust .................................................... 31
    C.    Limitation of Liability ........................................................................ 32
    D.    Injunction ......................................................................................... 33

ARTICLE VI CREDITOR TRUST; TRUSTEE .................................................... 34
    A.    Post Confirmation Estate ................................................................... 34
    B.    Creditor Trustee ............................................................................... 35
    C.    Advisory Board ................................................................................. 40
    D.    Exculpation ...................................................................................... 41

ARTICLE VII - MEANS OF IMPLEMENTATION OF THE PLAN ........................... 41
    A.    Continued Corporate Existence ........................................................... 41
    B.    Operations of the Reorganized Debtor ................................................. 41
    C.    Exit Financing ................................................................................... 42
    D.    Post-Effective Date Management of the Reorganized Debtor ................. 42
    E.    New Employment, Retirement, Indemnification and Other Related
        Agreements ...................................................................................... 42
    F.    Restructuring Transactions ................................................................. 43
    G.    Vesting of Assets; Release of Liens ..................................................... 44

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| H | Exemption From Certain Transfers | 44 |
| I. | Operation Between Confirmation and Effective Date | 45 |
| J. | Authority to Effectuate Plan | 45 |
| K. | Post-Confirmation Status Report | 45 |
| L. | Escrows | 46 |
| M. | Binding Effect | 46 |
| N. | Dissolution of Committee | 46 |
| O. | Good Faith | 46 |

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ................................................................................ 47
| | | |
|---|---|---|
| A. | Assumption of Executory Contracts and Unexpired Leases | 47 |
| B. | Assignment of Executory Contracts and Unexpired Leases | 48 |
| C. | Cure Rights for Executory Contracts and Unexpired Leases Assumed Under Plan | 48 |
| D. | Rejection of Executory Contracts and Unexpired Leases | 49 |
| E. | Assumption of Utility Service Agreements | 50 |
| F. | Assumption of Governmental Licenses | 50 |
| G. | Treatment of Compensation and Benefit Programs | 50 |
| H. | Continuing Obligations Owed to Debtor | 51 |
| I. | Limited Extension of Time to Assume or Reject | 52 |
| J. | Post-Petition Contracts and Leases | 53 |
| K. | Treatment of Claims Arising From Assumption or Rejection | 53 |

ARTICLE IX - PROVISIONS GOVERNING DISTRIBUTIONS ......................... 54
| | | |
|---|---|---|
| A. | Distributions for Claims Allowed as of the Effective Date | 54 |
| B. | Distributions; Causes of Action | 55 |
| C. | Manner of Payment | 55 |
| D. | Transmittal of Distributions to Parties Entitled Thereto | 56 |
| E. | Disputed Claims and Unclaimed Property | 57 |
| F. | Setoffs | 59 |
| G. | Saturday, Sunday or Legal Holiday | 59 |
| H. | Fractional Cents | 59 |
| I. | Corporate Action | 60 |
| J. | De Minimis Payments and Distributions | 60 |

ARTICLE X - PROCEDURES FOR RESOLVING DISPUTED CLAIMS .............. 61
| | | |
|---|---|---|
| A. | Prosecution of Objections to Claims | 61 |
| B. | Estimation of Claims | 62 |
| C. | Cumulative Remedies | 62 |
| D. | Payments and Distributions on Disputed Claims | 63 |
| E. | Allowance of Claims | 64 |
| F. | Controversies Concerning Impairment | 64 |

# TABLE OF CONTENTS
(continued)

**Page**

ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION OF THE
PLAN AND ACHIEVING THE EFFECTIVE DATE .......................................... 64
    A.      Condition Precedent to Confirmation ..................................................... 64
    B.      Conditions Precedent to Achieving the Effective Date ......................... 65
    C.      Effect of Non-Occurrence of Conditions to Achieving the Effective
          Date ........................................................................................................ 66
    D.      Notice of Effective Date ........................................................................ 66

ARTICLE XII - EFFECT OF ACHIEVING THE EFFECTIVE DATE ........................ 67
    A. Vesting Of Assets.......................................................................................... 67
    B.      Discharge of Claims Against the Debtor and the Reorganized
          Debtor ..................................................................................................... 68
    C.      Injunction Related to the Discharge....................................................... 68
    D.      Preservation of Rights of Action by the Debtor and the
          Reorganized Debtor ............................................................................... 69
    E.      Limitation of Liability............................................................................ 70
    F.      Injunction ............................................................................................... 71
    G.      Release of Liens...................................................................................... 72
    H.      Terms of Existing Injunctions or Stays.................................................. 72

ARTICLE XIII - RETENTION OF JURISDICTION......................................................... 73

ARTICLE XIV - MISCELLANEOUS PROVISIONS ..................................................... 76
    A.      Payment of Statutory Fees ..................................................................... 76
    B.      Modification of Plan .............................................................................. 77
    C.      Plan Supplement .................................................................................... 77
    D.      Revocation of Plan................................................................................. 78
    E.      Successors and Assigns.......................................................................... 78
    F.      Reservation of Rights............................................................................. 79
    G.      Post-Confirmation Effectiveness of Proofs of Claims........................... 79
    H.      Term of Injunctions or Stays.................................................................. 79
    I.      Further Assurances................................................................................. 79
    K.      Failure of Bankruptcy Court to Exercise Jurisdiction............................ 80
    L.      Governing Law ...................................................................................... 80
    M.      Headings ................................................................................................. 80
    N.      Notices ................................................................................................... 80
    O.      Filing of Additional Documents ............................................................ 82
    P.      Enforceability.......................................................................................... 82
    Q.      Severability ............................................................................................ 82
    R.      Notice of Default under the Plan ........................................................... 83
    S.      Investments ............................................................................................ 83
    T.      Reliance.................................................................................................. 83

Reference is made to the First Amended Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtor's history, business, results of operations and properties, and for a summary and analysis of the Plan.

All Holders of Claims should read the First Amended Disclosure Statement and the Plan carefully – and consult with their counsel and other applicable professionals – before voting to accept or reject the Plan.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION,

## COMPUTATION OF TIME AND GOVERNING LAW

**A.    Rules of Interpretation, Computation of Time and Governing Law**

1.    For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words herein and hereto refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference

2

only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.    Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws thereof.

## B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.    "Administrative Claim" means a Claim for costs and expenses of administration under section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of Debtor; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; (c) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; (d) all obligations

designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; and (e) all obligations arising from or in connection with the DIP Credit Agreement.

2. "Administrative Claims/Priority Claims Account" means an account to be established and administered by the Reorganized Debtor containing funds deposited from the Debtor's Cash on hand on the Effective Date in an amount equal to the aggregate amount of asserted and unpaid Administrative Claims and Priority Claims incurred on or before the Effective Date (whether or not subject to dispute, but other than Administrative Claims and Priority Claims that are disallowed on or before the Effective Date pursuant to a Final Order of the Bankruptcy Court) other than Professional Fee Claims.

3. "Administrative Claims Bar Date" means 4:00 p.m. prevailing Eastern Time on the date set by Order of the Bankruptcy Court as the last day for filing all requests for payment of Administrative Claims incurred or accruing on or before January 25, 2010, other than the obligations arising from or in connection with the DIP Credit Agreement and those Administrative Claims expressly excluded therefrom pursuant to prior order of the Bankruptcy Court.

4. "Advisory Board" means the board consisting of three (3) Entities appointed by the Creditors' Committee effective as of the Effective Date pursuant to Article VI of this Plan to consult with and advise the Creditor Trustee with respect to decisions affecting the Creditor Trust.

5. "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by Debtor in its Schedules as other than

disputed, contingent or unliquidated and as to which Debtor or other party in interest have not Filed an objection on or before the 90th day after the Effective Date; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtor prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Reorganized Debtor, as the case may be, on or after the Effective Date and, to the extent necessary, approved by the Bankruptcy Court; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Claim or Priority Tax Claim executed by the Reorganized Debtor; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtor in connection with and in accordance with the Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law; or (e) a Claim that is allowed pursuant to the terms of this Plan.

6.  "Allowed Claim" means a Claim that has been Allowed.

7.  "Assets" means any and all of the respective real or personal property of any nature of the Debtor, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action and any other general intangibles of Debtor, of any nature

whatsoever, including, without limitation, the property of the estate pursuant to section 541 of the Bankruptcy Code.

8. "Avoidance Actions" mean all claims and causes of action which the Debtor has or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

9. "Ballot Date" means the date stated in the Voting Instructions by which all Ballots must be received, which date shall be _____ __, **2010** at 4:00 p.m., prevailing Eastern Time.

10. "Ballots" mean the ballots upon which Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

11. "Bankruptcy Code" means as set forth in sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as applicable to the Chapter 11 Case.

12. "Bankruptcy Court" means the United States District Court for the District of New Jersey having jurisdiction over this Chapter 11 Case and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code and/or the General Order of such District Court pursuant to Section 151 of title 28 of the United States Code, the bankruptcy unit of such District Court.

13. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the General, and Local Rules of the Bankruptcy Court for the District of New Jersey.

14. "Bar Date" means July 21, 2009, the date set by the Bankruptcy Court as the last day for filing a proof of a claim arising prior to the Petition Date against the Debtor in this Chapter 11 Case, other than those Claims expressly excluded therefrom pursuant to prior order of the Bankruptcy Court.

15. "Business Day" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

16. "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

17. "Causes of Action" means any claim or cause of action of the Debtor, including, without limitation, any Avoidance Action, including, without limitation, those actions listed in the section of the Disclosure Statement titled "Preservation of Rights of Action; Settlement of Causes of Action" that are or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any Entity and any objections to any Claims.

18. "Chapter 11 Case" means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, styled In re St. Mary's Hospital, Passaic, N.J., Case No. 09-15619 (MS), currently pending before the Bankruptcy Court, the Honorable Morris Stern presiding.

19. "Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against Debtor, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b)

any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

20. "Class" means a category of Holders of Claims as set forth in Article III of the Plan.

21. "CMS Claim" means that certain proof of claim filed on September 3, 2009 by the United States Department of Health and Human Services/Centers for Medicare and Medicaid Services in this Bankruptcy Case for $6,708,497.00.

22. "CMS Extended Repayment Plan" means the payment of the CMS Claim as described more fully herein.

23. "Committee" or "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in this Chapter 11 Case on March 25, 2009.

24. "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Article XI of the Plan having been (a) satisfied or (b) waived pursuant to Article XI.

25. "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

26. "Confirmation Hearing" means the duly noticed hearing to be held in accordance with section 1128(a) of the Bankruptcy Code at which confirmation of the

Plan is considered by the Bankruptcy Court, as such hearing my be adjourned or continued from time to time.

27. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

28. "Contingent Claim" means a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

29. "Creditor" means any Holder of a Claim against the Debtor that arose on or prior to the Petition Date.

30. "Creditor Distributable Assets" means the Creditor Fund, as well as all interest and proceeds thereon generated by the Creditor Trust and net of the expenses of administration thereof, including, without limitation, the fees and expenses of the Creditor Trustee and the Specified Professional Fees.

31. "Creditor Fund" means the proceeds of the Creditor Note and the net proceeds of the Transferred Avoidance Actions.

32. "Creditor Note" means that certain unsecured note in the face amount of $1 million, paid in equal monthly installments over one (1) year, bearing an interest rate of five percent (5%), the proceeds of which shall be distributed, Pro Rata, to the Holders of Allowed General Unsecured Claims, which shall be between and among the Debtor or Reorganized Debtor and the Creditor Trustee.

33. "Creditor Trust" means the grantor trust to be enacted upon the Effective Date in respect of the Estate of the Debtor in accordance with the provisions of Article VI of this Plan for the benefit of the Holders of Allowed General Unsecured Claims.

34. "Creditor Trust Assets" means the Assets transferred by the Debtor on the Effective Date to the Creditor Trust which include the Creditor Note and Transferred Avoidance Actions.

35. "Creditor Trust Agreement" means the agreement establishing and delineating the terms and conditions of the Creditor Trust, substantially in the form annexed to the Disclosure Statement as Exhibit E.

36. "Creditor Trustee" means the Person or Persons appointed in accordance with the Creditor Trust Agreement, and identified in the Plan Supplement, as the fiduciary responsible for administering the Creditor Trust.

37. "Cure" means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption and assignment of an executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contracts or unexpired leases, to the extent such obligations are enforceable under the Bankruptcy Code and applicable law.

38. "Debtor" means St. Mary's Hospital, Passaic, N.J.

39. "Debtor in Possession" means the Debtor in its capacity as debtor in possession in this Chapter 11 Case pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

40. "DIP Credit Agreement" means (a) the Final Financing Order, and (b) the Terms and Conditions of Postpetition Financing attached as Exhibit A to the Final Financing Order, as amended, modified and supplemented from time to time.

41. "Disallowed" means, with reference to any Claim, a Claim or portion thereof that has been disallowed or expunged by Final Order of the Bankruptcy Court.

42. "Disclosure Statement" means the Debtor's First Amended Disclosure Statement dated December 17, 2009, as amended, supplemented, or modified from time to time, describing the Plan, that was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

43. "Disputed" means, with respect to any Claim, any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent; or (b) as to which Debtor or any other party in interest have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order or (c) held by a Creditor who is a defendant or proposed defendant in an Avoidance Action.

44. "Distribution" means any consideration to be distributed to any Entity pursuant to the Plan.

45. "Distribution Date" means the date upon which a Distribution is made by the Reorganized Debtor in accordance with the Plan to Holders of Allowed Claims entitled to receive Distributions under the Plan.

46. "Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

47. "Effective Date" means the date selected by the Debtor which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in

11

effect, and (b) all conditions specified in Article XI of the Plan have been satisfied unless waived by the Debtor, the Committee and the Lender.

48. "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

49. "Estate" means, individually, the Estate of the Debtor in this Chapter 11 Case, created pursuant to section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case.

50. "Excluded Claims" means all Avoidance Actions or other claims or causes of action against (a) any party to an assumed contract or unexpired lease under Article VIII of this Plan and (b) HFG.

51. "Exit Facility" means the agreements and related documents and instruments evidencing the financing by the Exit Lender of the Reorganized Debtor which shall be filed with the Bankruptcy Court prior to the Confirmation Hearing, the proceeds of which shall be used as determined by the Debtor to be necessary to satisfy payments required to be made under the Plan, repay the obligations under the DIP Credit Agreement, fund working capital and general corporate purposes of the Reorganized Debtor following the Effective Date.

52. "Exit Lender" means HFG, as the lender under the Exit Facility.

53. "Exit Lender Liens" means the secured first priority lien of the Exit Lender on the Debtor's eligible accounts receivables, inventory, general intangibles, and all other assets of SMH (except for SMH's real property and contents thereof) and all proceeds thereof, after the Effective Date.

54. "Face Amount" means (a) when used in reference to a Disputed Claim, the Disputed Claim amount, and (b) when used in reference to an Allowed Claim, the Allowed Claim amount.

55. "File" or "Filed" means file or filed with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

56. "Final Decree" means the decree in this Bankruptcy Case contemplated under Bankruptcy Rule 3022.

57. "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek *certiorari* has expired and no appeal or petition for *certiorari* has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

58. "Final Financing Order" means that Final Financing Order (I) Authorizing the Debtor to Incur Postpetition Indebtedness With Administrative Superpriority and Secured by Senior Liens in Substantially All Assets of the Debtor Pursuant to Section 364(c)(1), (c)(2), (c)(3) and (d) of the Bankruptcy Code, (II) Authorizing Assumption of Prepetition Obligations, (III) Granting Adequate Protection, and (IV) Granting Other Relief by the Bankruptcy Court entered on April 6, 2009 [Docket No. 116].

59. "General Unsecured Claim" means any Unsecured Claim against the Debtor.

60. "HFG" means collectively Heathcare Finance Group, Inc., HFG Healthco-4 LLC and HFG Healthco-6 LLC.

61. "Holder" means an Entity holding a Claim.

62. "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

63. "Initial Distribution Date" means the first Distribution Date following the Effective Date.

64. "Insider" means an insider of any Debtor, as defined in section 101(31) of the Bankruptcy Code.

65. "Interim Fee Order" means that certain Administrative Fee Order Establishing Procedures for Allowance and Payment of Interim Compensation and Reimbursement of Expense to Professionals dated June 30, 2009, as modified by (A) the Order (i) Denying Administrative Expense Claim Rights and (ii) Modifying this Court's Administrative Fee Order of June 30, 2009, dated July 31, 2009; and (B) the Order Modifying the Court's Administrative Fee Orders Dated June 30, 2009 and July 31, 2009, dated September 16, 2009.

66. "JNESO Nurses Unit CBA" means the new Collective Bargaining Agreement between SMH and JNESO, District Council 1, IOUE, AFL-CIO, Nurses Unit, the terms of which shall be in accordance with the agreement in principle between SMH and the Nurses Unit, which agreement shall be memorialized and ratified by the Union on or before November 10, 2009 and which shall become effective upon the Effective Date.

67. "JNESO Technical Unit CBA" means the new Collective Bargaining Agreement between SMH and JNESO, District Council 1, IOUE, AFL-CIO, Technical Unit, the terms of which shall be in accordance with the agreement in principle between

SMH and the Technical Unit, which agreement shall be memorialized and ratified by the Union on or before November 10, 2009 and which shall become effective upon the Effective Date.

68. "Lender" means HFG Healthco-4 LLC, as lender, and Healthcare Finance Group, Inc., as administrative agent, under the DIP Credit Agreement.

69. "Lender Debt" shall have the meaning ascribed to such term in the DIP Credit Agreement.

70. "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind) to secure payment of a debt or performance of an obligation.

71. "Local 68 CBA" means the new Collective Bargaining Agreement between SMH and Local 68, IOUE, AFL-CIO, the terms of which shall be in accordance with that certain Memorandum of Agreement dated October 30, 2009 and which shall become effective upon the Effective Date.

72. "Management" means Officers and Directors of the Debtor, and certain key employees.

73. "NJHCFFA" means the New Jersey Health Care Facilities Financing Authority.

74. "NJHCFFA Deficiency Claim" means the Unsecured Claim of NJHCFFA.

75. "NJHCFFA Claim" means the Allowed Claim of NJHCFFA under that certain loan agreement and promissory note dated April 1, 2007. The proof of claim filed by the Bank of New York Mellon shall be treated as part and parcel of the NJHCFFA Claim. The Bank of New York Mellon shall not be entitled to any further distribution,

except for the payment of the Administrative Claim of the Master Trustee and any further obligations required pursuant to the Debtor's cures elsewhere described herein, including payment of the outstanding fees and costs of The Bank of New York Mellon in connection with the Debtor's Chapter 11 case, up to an amount of $150,000.

76. "Other Secured Claims" means any Secured Claim other than the Lender Group Secured Claim.

77. "Pennington Assets" means the Pennington Property together with all assets, property, income and interest incidental or related thereto.

78. "Pennington Property" consists of the following parcels of real property:  (a) the real property known as Block 3254, Lot 37 on the City of Passaic Tax Map, being commonly known as 211 Pennington Avenue, Passaic, New Jersey ("211 Pennington"), which contains 3.56 acres more or less and has on it a building containing approximately 244,803 square feet; (b) the real property known as Block 3237, Lot 47 on the City of Passaic Tax Map, being commonly known as 176 Pennington Avenue, Passaic, New Jersey ("176 Pennington"), which contains .902 acres more or less and is currently configured as a parking lot; and (c) the real property known as Block 3236, Lot 36 on the City of Passaic Tax Map, being commonly known as 191 Pennington Avenue, Passaic, New Jersey ("191 Pennington"), which contains .305 acres more or less and is currently configured as a parking lot.

79. "Pennington Property Trust" means the grantor trust to be enacted upon the Effective Date in respect of the Estate of the Debtor in accordance with the provisions of Article VII of this Plan for the benefit of the Reorganized Debtor.

80. "Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

81. "Petition Date" means March 9, 2009, the date on which Debtor filed its voluntary petition for reorganization commencing this Chapter 11 Case.

82. "Plan" means this Chapter 11 Plan of Reorganization, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions hereof.

83. "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

84. "Plan Supplement" means collectively, the documents, agreements, instruments, schedules and exhibits and forms thereof to be filed as specified in Article XIV of the Plan as a Plan Supplement, each such document, agreement, instrument, schedule and exhibit and form thereof may be altered, restated, modified or replaced from time to time, including subsequent to the filing of any such documents. Subsequent to their initial filing pursuant to Article XIV, the Debtor shall, unless otherwise provided in the Plan, be free to modify any such documents. Each such document, agreement, instrument, schedule or exhibit or form thereof is referred to herein as a "Plan Supplement."

85. "Post-Petition Trade Debt" means debt incurred by the Debtor with its respective vendors incurred in the ordinary course of business and which shall be paid in

the ordinary course of the Debtor's business and according to stated terms between the Debtor and the respective vendor.

86. "Pre-Petition Collateral" is as defined in the DIP Credit Agreement.

87. "Pre-Petition Credit Agreement" is as defined in the DIP Credit Agreement.

88. "Priority Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

89. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in sections 502(i), 507(a)(8) or 1129 (a)(9)(D) of the Bankruptcy Code.

90. "Pro Rata" means proportionately so that, with respect to a Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Claims of the Class in which the particular Claim is included (other than Claims disallowed by Final Order) to (ii) the amount of all Claims in that Class (other than Claims disallowed by Final Order).

91. "Professional" means an Entity (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code. Professionals shall only consist of the following: (i) Drinker, Biddle & Reath, LLP; (ii) Traxi LLC; (iii) Porzio Bromberg & Newman, P.C.; (iv) Amper Politziner & Mattia; (v) Teich Groh; (vi) Daniel McMurray; (vii) Neubert, Pepe & Monteith, P.C.; and

(viii) those Ordinary Course Professionals identified and approved in the Order Authorizing Employment and Retention of Ordinary Course Professionals Effective as of March 9, 2009, dated June 8, 2009 [Docket No. 299].

92. "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

93. "Professional Fees Account" means an account to be established and administered by the Reorganized Debtor containing funds deposited from the Debtor's Cash on hand ninety (90) days after the Effective Date in an amount equal to (i) the aggregate estimated amount of unpaid Professional Fee Claims (whether or not subject to dispute, but other than Professional Fee Claims that are disallowed on or before the Effective Date pursuant to a Final Order of the Bankruptcy Court) incurred on or before the Effective Date.

94. "Proof of Claim" means a proof of claim Filed pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

95. "Reorganized Debtor" means the Debtor on and after the Effective Date.

96. "Schedules" means the schedules of assets and liabilities as the Bankruptcy Court requires Debtor to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and Debtor's statements of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court requires the Debtor to file pursuant to section 521 of the

Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

97. "Secured Claim" means any Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value, net of any senior Lien, of the Estate's interest in the assets or property securing any such Claim or the amount subject to setoff, as the case may be.

98. "Secured Lender Claim" means collectively the Secured Claims of HFG in respect of the balance due under the Term Loan Documents, pursuant to which HFG has asserted a Secured Claim against the Debtor in the approximate principal amount of $2.75 million, together with fees, interest, expenses and other amounts payable under the Term Loan Documents and which Secured Claim is fully secured by a Lien on the Pennington Property.

99. "Secured Lender Lien" means collectively the Liens in the account receivables of the Debtor and Pennington Avenue Properties held by HFG. Pursuant to that certain Intercreditor Agreement dated June 5, 2008 which established respective priority over the Pre-Petition Collateral, HF-6 holds a first lien on the Pennington Avenue Properties and a subordinated lien to HF-4's lien against the account receivables of the Debtor.

100. "Specified Avoidance Action Professional Fees" means the fees and expenses incurred by the Creditor Trustee or the Creditor Trustee's professionals relating to the investigation, prosecution and/or collection of any Transferred Avoidance Action.

101. "Specified Claim Objection Professional Fees" means the fees and expenses incurred by the Creditor Trustee or Reorganized Debtor, or the professionals of the Creditor Trustee or Reorganized Debtor, relating solely and exclusively to objections to General Unsecured Claims of any Entity against the Debtor.

102. "Specified Professional Fees" means, collectively, the Specified Avoidance Action Professional Fees and the Specified Claim Objection Professional Fees.

103. "Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

104. "Term Loan Documents" means the Term Loan and Security Agreement dated as of June 5, 2008 among HFG and St. Mary's, and related agreements, documents and instruments delivered in connection therewith, each as amended, modified and supplemented from time to time.

105. "Transferred Avoidance Actions" means all Avoidance Actions of the Debtor other than the Excluded Claims.

106. "Unimpaired Claim" means an unimpaired Claim within the meaning of section 1124 of the Bankruptcy Code.

107."Unsecured Claim" means any Claim against the Debtor or Estate that is not a Secured Claim, Administrative Claim, Priority Tax Claim, or Priority Claim.

108."U. S. Trustee" means the Office of the United States Trustee for the District of New Jersey.

109."Voting Deadline" means the date established by the Order of the Court approving the Disclosure Statement, by which the Debtor must actually receive a valid Ballot properly voting on the Plan in order for such vote to count as a vote to accept or reject the Plan.

110."Voting Instructions" means the instructions for voting on the Plan contained in Article I of the Disclosure Statement and in the Ballots.

111."Voting Record Date" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan. Pursuant to Bankruptcy Rules 3017(d) and 3018(a), this date is the date of entry of the Bankruptcy Court's order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

## ARTICLE II

## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES

## AND PRIORITY TAX CLAIMS

### A.   Introduction

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, Debtor has not placed the following Claims in a Class:

**B.**    **Administrative Claims (Other Than Professional Fee Claims)**

Except as otherwise provided for herein, and subject to the requirements of this Plan, on, or as reasonably practicable after the later of (i) the Initial Distribution Date or (ii) the Distribution Date immediately following the date on which an Administrative Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim (other than Professional Fee Claims) shall receive, in full settlement, satisfaction, release and discharge of and in exchange for such Allowed Administrative Claim (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim or (b) such other less favorable treatment as to which the Debtor, Reorganized Debtor and such Holder shall have agreed to in writing; provided however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument available that such Claim is already time-barred by prior orders of the Bankruptcy Court and except for liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case including but not limited to Post-Petition Trade Debt, all Administrative Claims required to be Filed and not Filed by the Administrative Claim Bar Date shall be deemed disallowed and discharged.   As provided herein, the Administrative Claims/Priority Claims Account will include funds sufficient to cover the aggregate asserted amount of all Disputed Administrative Claims.   Without limiting the foregoing, all fees payable

under 28 U.S.C. § 1930 that have not been paid, shall be paid on or before the Effective Date.

**C.    Professional Fee Claims**

The Reorganized Debtor shall pay Professionals from the Professional Fees Account all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date.

The Bankruptcy Court must rule on and allow all Professional Fee Claims before the fees will be owed and paid.  For all pre-Effective Date Professional Fee Claims, except Bankruptcy Clerk's Office fees and U.S. Trustee's fees, the Professional in question must file and serve a properly noticed final fee application and the Bankruptcy Court must rule on the application.  Only the amount of fees and expenses Allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.

The Reorganized Debtor may retain and compensate professionals for services rendered following the Effective Date without order of the Bankruptcy Court.

Pursuant to DNJ LBR 3016-1(e), professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must File and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than ninety (90) days after the Effective Date.  All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.  Holders of Administrative Claims (including, without limitation, Professionals) requesting compensation or reimbursement of such expenses pursuant to

sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code that do not file such requests by the applicable deadline provided for herein shall be forever barred from asserting such claims against the Debtor, the Estate, Reorganized Debtor, or their successors, their assigns or their property. Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court; provided that such objection deadline is at least twenty (20) days after the filing and service of such final fee application.

## D.    Priority Tax Claims

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Initial Distribution Date, each Holder of an Allowed Priority Tax Claim shall be entitled to receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, as shall have been determined by the Debtor in its sole discretion, (i) on the Initial Distribution Date, Cash equal to the unpaid portion of such Allowed Priority Tax Claim, or (ii) such other less favorable treatment as to which the Debtor, Reorganized Debtor and such Holder shall have agreed in writing. If and to the extent the aggregate amount of Allowed Priority Tax Claims exceeds amounts initially deposited in the Administrative Claims/Priority Claims Account for payment of such Claims, Allowed Priority Tax Claim will be paid by the Reorganized Debtor.

## E.    Administrative Claim of the Master Trustee

Pursuant to the Final Financing Order the Master Trustee was granted certain rights and remedies in the form of "adequate protection" of its liens further described herein. In connection with such granting of adequate protection, the Master Trustee was provided with a claim herein under 11 U.S.C. § 507(b), which claim shall be paid in full

on or within three (3) months after the Effective Date in connection with the Debtor's

cure of defaults under the Master Trust Indenture, up to an amount of $150,000.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS

**A.   Summary**

The categories of Claims listed below classify Claims for all purposes, including

voting, Confirmation and Distribution pursuant to the Plan and pursuant to sections 1122

and 1123(a)(1) of the Bankruptcy Code.   A Claim shall be deemed classified in a

particular Class only to the extent that the Claim qualifies within the description of that

Class and shall be deemed classified in a different Class to the extent that any remainder

of such Claim qualifies within the description of such different Class.   A Claim is in a

particular Class only to the extent that such Claim is Allowed in that Class and has not

been paid or otherwise settled prior to the Effective Date.

The classification of Claims against the Debtor pursuant to the Plan is as follows:

| Class | Status | Voting Rights |
|-------|--------|---------------|
| Class 1 – Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Secured Lender Claim | Unimpaired | Not Entitled to Vote |
| Class 3 – Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 4 – NJHCFFA Claim | Impaired | Entitled to Vote |
| Class 5 – General Unsecured Claims | Impaired | Entitled to Vote |

1.   **Class 1 – Priority Claims**

a.     Classification:  Class 1 consists of the Priority Claims against

the Debtor.

b.     Treatment:    The Reorganized Debtor shall satisfy the

Allowed amount of each Class 1 Priority Claim from the Administrative Claims/Priority

Claims Account to each Entity holding a Class 1 Priority Claim within thirty (30) days

following the Effective Date.  Except to the extent that a Holder of an Allowed Priority

Claim agrees to different treatment, the Reorganized Debtor shall either (i) pay Cash equal

to the unpaid portion of such Allowed Priority Claim within thirty (30) days of the

Effective Date or (ii) restore identified benefits including accrued vacation and sick time.

Such treatment of Priority Claims shall be determined by the Debtor in its sole discretion;

provided, however, that such Entity may be treated on such less favorable terms as may be

agreed to in writing by such Entity.

       c.     Voting:  Class 1 is an Unimpaired Class and Holders of Class

1 Claims are not entitled to vote on the Plan.

### 2.   Class 2 – Secured Lender Claim

       a.     Classification:   Class 2 consists of the Secured Lender

Claim against the Debtor.

       b.     Treatment:  To the extent the Secured Lender Claim was

not previously paid in full, the Reorganized Debtor shall pay the Secured Lender Claim in

full in Cash on the Effective Date.

       c.     Voting:  Class 2 is an Unimpaired Class and Holders of

Class 2 Claims are not entitled to vote on the Plan.

### 3.   Class 3 – Other Secured Claims

       a.     Classification:   Class 3 consists of the Other Secured

Claims (to the extent any such claims exist), against the Debtor.   Class 3 expressly

includes the following:  (i) Certain secured claims of the City of Passaic ("Passaic") for

real estate taxes owed on Debtor's non-tax exempt real property.  These claims, held

either by Passaic or by third party tax certificate buyers, total approximately $90,000 and

are entitled to first lien priority pursuant to applicable law; (ii) Certain secured claims of

Passaic for sewer charges owed on Debtor's real property.    These claims total

approximately $350,000 and are entitled to first lien priority pursuant to applicable law;

and (iii) Certain secured claims of the Passaic Valley Water Commission (the "PVWC")

for water charges owed on Debtor's real property. These claims total approximately

$300,000 and are entitled to first lien priority pursuant to applicable law.

The Class 3 claims of Passaic and the PVWC are unimpaired, and

Passaic and the PVWC are not entitled to vote on the Plan. At the option of the

Reorganized Debtor, either: (i) the legal, equitable, and contractual rights to which

Passaic and/or the PVWC are entitled shall be left unaltered; (ii) the Class 3 claims of

Passaic and/or the PVWC shall be left unimpaired in the manner described in Section

1142(a) of the Bankruptcy Code; (iii) Passaic and/or the PVWC shall receive or retain the

collateral securing their claims; or (iv) Passaic and/or the PVWC shall reach a mutually

satisfactory alternative agreement with the Reorganized Debtor.

b.    Treatment:    To the extent there are any Allowed Other

Secured Claims against property that is property of the Debtor, at the option of the

Reorganized Debtor, either (i) the legal, equitable and contractual rights to which such

Claim entitles the Holder thereof shall be left unaltered; (ii) the Other Secured Claim shall

be left unimpaired in the manner described in section 1124(2) of the Bankruptcy Code; or

(iii) the Holder of such Claim shall receive or retain the collateral securing such Claim.

c.    Voting: Class 3 is an Unimpaired Class and Holders of Class 3

Claims are not entitled to vote on the Plan.

4.   **Class 4 – NJHCFFA Claim**

a.   Classification:  Class 4 consists of the NJHCFFA Claim. The proof of claim filed herein by the Bank of New York Mellon shall be treated as part and parcel of the NJHCFFA Claim.  Bank of New York Mellon shall not be entitled to any further distribution, except for the payment of the Administrative Claim of the Master Trustee and any further obligations required pursuant to the Debtor's cures elsewhere described herein, including payment of the outstanding fees and costs of The Bank of New York Mellon in connection with the Debtor's Chapter 11 case, up to an amount of $150,000.

b.   Treatment:  The NJHCFFA Claim shall be treated as an Allowed Secured Claim and shall receive $2.2 million per annum in debt service, to be paid by the Reorganized Debtor semi-annually to commence March 2010, for a period of thirty (30) years at an interest rate of five percent (5%) per annum.

On December 17, 2009, NJHCFFA elected for the Class 4 NJHCFFA Claim to be treated in accordance with section 1111(b)(2) of the Bankruptcy Code. *[Docket No. 759].*

c.   Voting:  Class 4 is an Impaired Class and Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.   **Class 5 – General Unsecured Claims**

a.   Classification:  Class 5 consists of the Claims of Holders of General Unsecured Claims.

b.   Treatment:  Each Holder of an Allowed General Unsecured Claims shall receive a Pro Rata share of the Creditor Trust.

29

c.      Voting:  Class 5 is an Impaired Class and Holders of Class

5 Claims are entitled to vote to accept or reject the Plan.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

### A.      Voting Classes

Each Holder of an Allowed Claim in Classes 4 and 5 is entitled to vote either to

accept or to reject the Plan.  Only those votes cast by Holders of Allowed Claims shall be

counted in determining whether acceptances have been received sufficient in number and

amount to obtain Confirmation.

In the event of a controversy as to whether any Holder of an Allowed Claim or

Plan Class is Impaired under the Plan, the Bankruptcy Court shall, after notice and a

hearing, determine such controversy.

### B.      Acceptance by Impaired Classes

An Impaired Class of Claims shall be deemed to have accepted the Plan if (a) the

Holders (other than any Holder designated under section 1126(e) of the Bankruptcy

Code) of at least two-thirds in amount of the Allowed Claims actually voting in such

Class have voted to accept the Plan and (b) the Holders (other than any Holder designated

under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the

Allowed Claims actually voting in such Class have voted to accept the Plan.

### C.      Presumed Acceptance/Rejection of Plan

As indicated, Class 1, 2 and 3 are not impaired and are therefore conclusively

presumed to accept the Plan and are not entitled to vote.

**D.    Nonconsensual Confirmation**

This Plan may be confirmed under the so-called "cram down" provisions set forth in 1129(b) of the Bankruptcy Code if, in addition to satisfying the other requirements for confirmation, this Plan "does not discriminate unfairly" and is determined to be "fair and equitable" with respect to each Class of Claims that has not accepted this Plan (*i.e.*, dissenting Classes).  In the event that any Impaired Class rejects the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan under this provision.    Without limiting the foregoing, in the event that one Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended in accordance with section XVII of the Plan and the Debtor reserves the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.    The Debtor further reserves the right to alter, amend, modify, revoke or withdraw the Plan or any amendment or supplement thereto, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary, in accordance with section 1127 of the Bankruptcy Code and this Plan.

**E.    How to Vote**

A form of Ballot is being provided to Creditors in Classes 4 and 5 by which Creditors in such Classes may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives most of you one important choice to make with respect to the Plan – you can vote <u>for</u> or <u>against</u> this Plan.  To vote on the Plan, please complete the Ballot, as indicated thereon, (1) by indicating on the enclosed ballot that (a) you accept

the Plan or (b) reject the Plan and (2) by signing your name and mailing the ballot in the envelope provided for this purpose.

IN ORDER TO BE COUNTED, BALLOTS MUST BE COMPLETED, SIGNED AND RECEIVED NO LATER THAN 4:00 p.m. Prevailing Eastern Time ON _____ ___, 2010 AT THE FOLLOWING ADDRESS:

> **St. Mary's Hospital, Passaic, N.J. Ballot Processing Center**
> **c/o Drinker Biddle & Reath, LLP**
> **500 Campus Drive**
> **Florham Park, NJ 07932**

IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED AS DESCRIBED, IT WILL NOT BE COUNTED. IF YOUR BALLOT IS DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY ADDRESSING A WRITTEN REQUEST TO THE ADDRESS SHOWN ABOVE. FACSIMILE OR ELECTRONICALLY SUBMITTED BALLOTS WILL NOT BE COUNTED.

### ARTICLE V

### EFFECT OF CONSUMMATION

**A.**    **Vesting of Cash and Certain Assets in the Creditor Trust**

On the Effective Date, the Creditor Trust Assets shall be irrevocably transferred to and vest in the Creditor Trust to be managed and used by the Creditor Trustee for the sole purposes of carrying out the Plan and effectuating the Distributions to the General Unsecured Creditors provided for in the Plan. Except as otherwise provided in the Plan, the Estate's title to and any interest in the Creditor Trust Assets and/or Creditor Fund will pass to the Creditor Trust on the Effective Date, free and clear of all Claims, Liens and

Interests, including any "equity" or "sponsorship" interests, in accordance with section 1141 of the Bankruptcy Code.

**B.**     **Establishment of the Creditor Trust**

The Debtor shall have the sole authority to administer all Assets prior to their transfer to the Creditor Trust, as the case may be.

On or before the Effective Date, the Debtor, on its own behalf and on behalf of Holders of Allowed General Unsecured Claims, shall establish the Creditor Trust.

For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Creditor Trustee and the beneficiaries of the Creditor Trust) shall treat the transfer of Assets to the Creditor Trust in accordance with the terms of the Plan as a transfer of such assets by the Debtor to the Holders of Allowed General Unsecured Claims to be satisfied by the Creditor Trust, and followed by a transfer by such Holders to the Creditor Trust, and the Creditor Trust beneficiaries shall be treated as the grantors and owners thereof.

**C.**     **Limitation of Liability**

Except as expressly set forth in the Plan, on and after the Confirmation Date, neither the Debtor, nor their successors or assigns, the Creditor Trustee, the Creditor Trust, the members of the Creditors' Committee, the Advisory Board, and HFG (in its capacity as Lender and pre-petition lender under the Term Loan Documents), nor any of their respective past and present officers, directors, employees, members, agents, representatives, shareholders, attorneys, accountants, financial advisors, investment bankers, lenders, consultants, experts, and Professionals (other than McCarter & English, LLP) and agents for the foregoing shall have or incur any liability for, and are expressly

exculpated and released from, any claim (as defined in section 101(5) of the Bankruptcy Code) or any past or present actions taken or omitted to be taken under or in connection with, related to, effecting, or arising out of the following: (i) the Debtor's operations after the Petition Date; (ii) these Chapter 11 Case; (iii) the postpetition administration of the Debtor's Cash, Assets, and real and personal property; (iv) the pursuit of Confirmation; (v) the formulation, preparation, dissemination, implementation, administration, confirmation, or Consummation of the Plan and the Disclosure Statement; (vi) the sale and liquidation of the Assets (including the prosecution of Causes of Action), or the property to be distributed under the Plan; (vii) any other act taken or omitted to be taken in connection with the Debtor's business after the Petition Date; (viii) any acts or omissions taken by the Creditor Trustee or his Professionals in exercising their responsibilities under the Plan or Creditor Trust Agreement; or (ix) any contract, instrument, release, or other agreement entered into or created in connection with the foregoing; except only for actions or omissions to act to the extent determined by a court of competent jurisdiction (in a Final Order) to be by reason of such party's gross negligence, willful misconduct, or fraud, and in all respects, such party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; it being expressly understood that any act or omission with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation.

For the avoidance of all doubt, nothing herein shall serve as a release to McCarter & English, LLP for its acts taken in connection with its representation of the Debtor.

## D.    Injunction

Except as otherwise expressly provided in the Plan, all Entities that have held, hold or may hold Claims against the Debtor, and/or the Creditor Trust are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtor, its Estates, the Creditor Trust, the Creditor Trustee, the Advisory Board, the Creditors' Committee, the Professionals, or HFG (in its capacity as Lender and pre-petition lender under the Term Loan Documents) or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date, including, without limitation:  (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (iv) asserting any right of setoff against any obligation, debt or liability due to the Debtor.

Except as expressly provided herein or in the Final Financing Order, the Debtor, the Creditor Trust and the Creditor Trustee expressly reserve all rights and defenses that the Debtor may have (including, without limitation, the rights of subrogation and recoupment) with respect to any obligation, debt or liability allegedly due to any Entity.

By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth herein.

## ARTICLE VI

## CREDITOR TRUST; TRUSTEE

**A.**     **Post Confirmation Estate**

    **1.**     **Purpose of the Creditor Trust**

On the Effective Date, the Debtor shall transfer the Creditor Trust Assets from which the proceeds thereof will comprise the Creditor Fund and payment of all Allowed General Unsecured Claims shall be paid. The Debtor shall relinquish any and all rights in and to the Creditor Trust Assets and Creditor Fund, which shall be transferred to the Creditor Trust free and clear of all Claims, Liens and Interests, including any "equity" or "sponsorship" interests, in accordance with section 1141 of the Bankruptcy Code. The Creditor Trust shall be established for the primary purpose of liquidating the assets in the Creditor Fund for and on behalf of holders of Allowed General Unsecured Claims, in accordance with Treas. Reg. §301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Creditor Trust shall not be deemed a successor-in-interest of Debtor or Reorganized Debtor for any purpose other than as specifically set forth herein. The Creditor Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the beneficiaries treated as grantors and owners of the trust.

**B.**     **Creditor Trustee**

    **1.**     **Generally**

The retention of the Creditor Trustee shall be pursuant to the Creditor Trust Agreement acceptable in all respects to the Creditors' Committee and the Debtor, substantially in the form annexed as Exhibit "B" hereof. The Creditor Trustee shall be deemed to have been appointed as the Estate's representative by the Bankruptcy Court

pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

In the event that the Creditor Trustee resigns, is removed, terminated or otherwise unable to serve as the Creditor Trustee, then the Advisory Board shall have the right to select a successor who may be appointed the Creditor Trustee. Any successor Creditor Trustee appointed shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Creditor Trust Agreement.

On the Effective Date, the Creditor Trustee will be the sole authorized representative and signatory of the Creditor Trust. The powers, authority, responsibilities and duties of the Creditor Trustee shall be governed by the Plan, the Confirmation Order, the Creditor Trust Agreement and the Bankruptcy Code. The Creditor Trustee may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Creditor Trust.

## 2.    **Transfer of Assets**

The transfer of the Creditor Trust Assets to the Creditor Trust will be made for the benefit of the beneficiaries thereof, but only to the extent such beneficiaries are entitled to Distributions under the Plan. Upon completion of the transfer of the Creditor Trust Assets into the Creditor Trust, the Reorganized Debtor will have no interest in, or with respect to, Creditor Trust Assets, the Creditor Fund or the Creditor Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Reorganized Debtor, the Creditor Trustee and the beneficiaries) will treat the transfer of assets to the Creditor Trust in accordance with the terms of the Plan, as a transfer to the beneficiaries, followed by a transfer by such beneficiaries to the Creditor Trust, and the

beneficiaries will be treated as the grantors and owners thereof.

### 3.        Valuation of Assets

As soon as practicable after the Effective Date, the Creditor Trustee shall apprise

the beneficiaries of the Creditor Trust of the value of the Creditor Trust Assets and the

Creditor Fund.   The valuation shall be used consistently by all parties (including the

Creditor Trustee and the beneficiaries of the Creditor Trust) for all federal income tax

purposes.   The purpose of the valuation is to comply with the general criteria for

obtaining an IRS ruling that an entity created pursuant to a confirmed plan of

reorganization under chapter 11 of the Bankruptcy Code will be classified as a liquidating

trust.   Any dispute regarding the valuation of these assets shall be resolved by the

Bankruptcy Court.

### 4.        Responsibilities and Authority of the Creditor Trustee

The responsibilities and authority of the Creditor Trustee shall include (a)

calculating and implementing all distributions from the Creditor Distributable Assets in

accordance with the Plan; (b) filing all required tax returns and paying taxes and all other

obligations on behalf of the Creditor Trust from funds held by the Creditor Trust; (c)

periodic reporting to the beneficiaries of the Creditor Trust of the status of the General

Unsecured Claims resolution process, distributions on Allowed General Unsecured

Claims, and prosecution of Transferred Avoidance Actions; (d) liquidating the assets of

the Creditor Trust and providing for the distribution of the net proceeds thereof in

accordance with the provisions of the Plan; (e) retaining and paying at normal and

customary rates or contingency fee basis, on a monthly basis, professionals in connection

with the Creditor Trustee's duties; (f) reviewing, analyzing, and objecting to General

Unsecured Claims, including the prosecution of such objections as described more fully in the Creditor Trust Agreement; and (g) such other responsibilities as may be vested in the Creditor Trustee pursuant to the Plan, Creditor Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

**5.    Powers of the Creditor Trustee**

The powers of the Creditor Trustee to administer the Creditor Trust shall, without any further Bankruptcy Court approval in each of the following cases, include inter alia, (a) the power to invest funds in, and withdraw, make distributions and pay taxes and other obligations owed by the Creditor Trust from funds held by the Creditor Trustee in accordance with the Plan and Creditor Trust Agreement, (b) the power to engage and compensate without prior Bankruptcy Court order or approval employees and professional Entities to assist the Creditor Trustee with respect to his responsibilities, (c) the power to prosecute, compromise and settle Transferred Avoidance Actions on behalf of or against the Creditor Trust without prior Bankruptcy Court approval but in accordance with the Creditor Trust Agreement, and (d) such other powers as may be vested in or assumed by the Creditor Trustee pursuant to the Plan, the Creditor Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan.   Except as expressly set forth herein and in the Creditor Trust Agreement, the Creditor Trustee, on behalf of the Creditor Trust, shall have absolute discretion to pursue or not to pursue any and all claims, rights, Transferred Avoidance Actions, as he determines is in the best interests of the beneficiaries and consistent with the purposes of the Creditor Trust, and shall have no liability for the outcome of his/her decision, other than those decisions constituting gross negligence or willful misconduct.

The Creditor Trustee may incur any reasonable and necessary expenses in liquidating and converting the assets in the Creditor Trust to Cash.

**6.      Compensation of Creditor Trustee**

The Creditor Trustee shall serve on (i) the terms, conditions and rights set forth in the Plan, Confirmation Order and the Creditor Trust Agreement, or (ii) such terms, conditions and rights as otherwise agreed to by the Creditor Trustee and the Debtor, after consultation with the Creditors' Committee. The Creditor Trustee shall not be required to file a fee application to receive compensation. The compensation for the Creditor Trustee shall be set forth in the Creditor Trust Agreement.

**7.      Retention and Payment of Professionals**

The Creditor Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents in the discretion of the Creditor Trustee to assist and advise the Creditor Trustee in the performance of his/her duties and compensate such professionals from the assets of the Creditor Trust. Notwithstanding the foregoing, (i) Specified Avoidance Action Professional Fees (excluding filing fees and other expenses) shall be paid on a contingency basis and solely and exclusively from the proceeds of Transferred Avoidance Actions, and not from the Creditor Fund, and (ii) Specified Claims Objection Professional Fees shall be paid from the Creditor Fund or the portion of the proceeds of Transferred Avoidance Actions otherwise distributable to the Holders of Allowed General Unsecured Claims. The remaining fees (including filing fees and other expenses) if any, of the Creditor Trustee may be paid from the Creditor Fund or the portion of the proceeds of Transferred Avoidance Actions otherwise distributable to the Holders of Allowed General Unsecured Claims.

8.     **Limitation on Liability of the Creditor Trustee**

The Creditor Trustee and his Professionals shall be entitled to indemnification out of the assets of the Creditor Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Creditor Trustee or his Professionals may incur or sustain by reason of being or having been a Creditor Trustee or Professional of the Creditor Trustee or for performing any functions incidental to such service; however, the foregoing shall not relieve the Creditor Trustee or his Professional from liability for bad faith, willful misfeasance, reckless disregard of duty, gross negligence, fraud, self-dealing or breach of financial duty.

9.     **Termination of the Creditor Trust**

The existence of the Creditor Trust and the authority of the Creditor Trust will commence as of the Effective Date and will remain and continue in full force and effect until all of the Creditor Trust Assets are liquidated in accordance with the Plan, the funds in the Creditor Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Chapter 11 Case is a Final Order.

At such time as the Creditor Trust has been fully administered (i.e., when all things requiring action by the Creditor Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the Creditor Trustee will file an application for approval of its final report and the entry of the final decree by the Bankruptcy Court.

## C.   Advisory Board

### 1.   Appointment of Advisory Board

A creditor "Advisory Board" shall be created on the Effective Date.   The Advisory Board shall consist of three (3) Entities chosen by the members of the Creditors' Committee.   The Advisory Board shall adopt bylaws, as it may deem appropriate.   In the event of any vacancies, the remaining members shall have the authority to fill such vacancy.   In the event any position is vacant for more than thirty (30) days, the Creditor Trustee shall have the authority, without need for the remaining members of the Advisory Board, to fill such vacancy.   Upon certification by the Creditor Trustee that all Transferred Avoidance Actions and Disputed General Unsecured Claims have been concluded and all Creditor Distributable Assets distributed in accordance with the Plan, the Advisory Board shall be disbanded without need for further notice or action.

### 2.   Duties of Advisory Board

The Advisory Board shall monitor the status and progress of Disputed General Unsecured Claims and Transferred Avoidance Actions.   The Advisory Board shall meet and/or consult periodically with the Creditor Trustee and keep itself apprised of the affairs of the Creditor Trust.   The Advisory Board shall have the authority to remove the Creditor Trustee and appoint a successor Creditor Trustee in accordance with the terms of the Creditor Trust Agreement.

### 3.   Compensation

Members of the Advisory Board shall be entitled to reimbursement of reasonable and necessary expenses incurred in carrying out their duties as members of the Advisory Board, all of which shall be paid from the Creditor Fund.

**D.**    **Exculpation**

No Holder of a Claim or any other party-in-interest will have, or otherwise pursue, any Claim or cause of action against the Creditor Trustee, the Advisory Board, the Creditor Trust or the employees or professionals thereof (solely in the performance of their duties thereas), for making payments in accordance with the Plan or for fulfilling any functions incidental to implementing the provisions of the Plan, except for any acts or omissions to act that are the result of willful misconduct or gross negligence.

## ARTICLE VII

## MEANS OF IMPLEMENTATION OF THE PLAN

**A.**    **Continued Corporate Existence**

The Debtor shall continue to exist as the Reorganized Debtor after the Effective Date in accordance with the laws of New Jersey as a not-for-profit corporation and pursuant to its articles of incorporation and by-laws in effect prior to the Effective Date, except to the extent such articles of incorporation and by-laws are amended pursuant to the Plan.

**B.**    **Operations of the Reorganized Debtor**

On and after the Effective Date, the Reorganized Debtor may operate its business, may use, acquire and dispose of property, may retain, compensate and pay any professionals or advisers, and compromise or settle any causes of action, claims or interests without the supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order.

**C.**     **Exit Financing**

On the Effective Date, the Reorganized Debtor shall enter into the Exit Facility, and any and all new promissory notes and all other documents, instruments, mortgages, and agreements shall be executed and delivered. The obligations incurred by the Reorganized Debtor pursuant to the Exit Facility shall be paid as set forth therein.

**D.**     **Post-Effective Date Management of the Reorganized Debtor**

Except as expressly provided in this Plan and the articles of incorporation and by-laws of the Reorganized Debtor (as amended from time to time), the operation, management and control of the Reorganized Debtor shall be the general responsibility of its board of directors and senior officers. Upon the Effective Date for the Reorganized Debtor, the board of directors shall be reconstituted.

**E.**     **New Employment, Retirement, Indemnification and Other Related Agreements**

As of the Effective Date, the Reorganized Debtor shall have the authority, without need for any approval by the Bankruptcy Court, (i) to maintain, amend, or revise existing employment, retirement, welfare, incentive, severance, indemnification and other agreements with its active and retired director, officers, and employees, subject to the terms and conditions of any such agreement, and (ii) to enter into new employment, retirement, welfare, incentive, severance, indemnification and other agreements for active and retired employees.

Except as expressly provided herein, the Debtor shall honor its non-monetary obligations to its employees, including vacation and sick time, in the ordinary course.

**F.    Restructuring Transactions**

On or as of the Effective Date, the distributions provided for under the Plan may be effectuated pursuant to the Restructuring Transactions described herein. The Debtor reserves the right to amend the Plan to implement the Restructuring Transactions no later than ten (10) days prior to the Confirmation Date, without the need for further approval or resolicitation of any party. Consistent with the Plan, the Debtor intends to elect to effectuate the following restructuring transactions:

(1)    Execution of the JNESO Nurses Unit CBA, which shall be in accordance with the agreement in principle between SMH and the Nurses Unit, which agreement shall be memorialized and ratified by the Union on or before November 10, 2009 and which shall become effective upon the Effective Date.

(2)    Execution of the JNESO Technical Unit CBA, which shall be in accordance with the agreement in principle between SMH and the Technical Unit, which agreement shall be memorialized and ratified by the Union on or before November 10, 2009 and which shall become effective upon the Effective Date.

(3)    Execution of a new Collective Bargaining Agreement in accordance with that certain Memorandum of Agreement dated October 30, 2009 between SMH and Local 68, IOUE, AFL-CIO ("Local 68"), which agreement shall become effective upon the Effective Date.

(4)    The CMS Claim shall be repaid pursuant to the Extended Repayment Plan. The pertinent terms and conditions of the Extended Repayment Plan are as follows: (a) On the effective date CMS shall be granted relief from the automatic stay to recoup the sum of $546,737.00 that was administratively frozen, (b) beginning the 30th day after the

Effective Date of the Plan, the Reorganized Debtor shall pay the sum of $6,174,655.00

(the "CMS Cure Amount") without interest in seventy-two (72) equal monthly

installment payments. The Reorganized Debtor shall retain the right to audit and appeal

the CMS Cure Amount and the right to participate and benefit from any challenges made

with respect to Medicare Disproportionate Share liability in the future.

The payments made pursuant to the Extended Repayment Plan shall be in

lieu of any other Distribution to CMS under this Plan.

**G.     Pennington Property Trust**

There shall be a Trust is established for the purpose of collecting, distributing and

liquidating the Pennington Property and Pennington Assets for the benefit of the

Reorganized Debtor, HFG, and any other parties as designated under the Plan or

Confirmation Order (including Passaic and PVWC, as appropriate). The purpose of the

Pennington Property Trust for the purpose of collecting, distributing and liquidating the

Pennington for the benefit of the Beneficiaries in accordance with the terms of this

Agreement, the Plan and the Confirmation Order.

The retention of the Property Trustee shall be pursuant to the Pennington Property

Trust Agreement, substantially in the form annexed hereto as Exhibit    The Property

Trustee shall have only the rights, powers and privileges expressly provided in the

Pennington Property Trust Agreement and this Plan. The Trustee shall have the power to

take the actions granted therein and any powers reasonably incidental thereto, which the

Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose

of the Trust, unless otherwise specifically limited or restricted by the Plan or the

Pennington Property Trust Agreement.

The Bankruptcy Court shall retain jurisdiction over the Pennington Property Trust for such purposes of the liquidation and/or sale of the Pennington Assets.

**H.    Vesting of Assets; Release of Liens**

Except as otherwise provided herein, the property of the Debtor's Estate shall vest in the Reorganized Debtor on the Effective Date.  As of the Effective Date, all such property of the Reorganized Debtor shall be free and all Liens, Claims and interests of any kind, except for the Exit Lender Liens as contemplated herein and as otherwise specifically provided in the Plan and the Confirmation Order.

Notwithstanding anything contained herein or in the Plan to the contrary, the liens of Bank of New York Mellon, NJHCFFA, or both, as the case may be, pursuant to, *inter alia*, the Master Indenture and other indenture documents, the First Pre-Petition Loan Documents, the Second Prepetition Loan Documents, and the Final Financing Order, shall be preserved in full

**I    Exemption From Certain Transfers**

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument from the Debtor to a Reorganized Debtor or any other Entity pursuant to this Plan, including, without limitation, the granting or recording of any Lien or mortgage on any property under the Exit Facility, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, recording tax, or other similar tax or governmental assessment and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the

foregoing instruments or other documents without payment of any such tax or governmental assessment.

**J.    Operation Between Confirmation and Effective Date**

The Debtor shall continue to operate as a Debtor-in-Possession during the period from the Confirmation Date through and until the Effective Date.

**K.    Authority to Effectuate Plan**

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying Debtor's by-laws such that the provisions of this Plan can be effectuated. Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve the Effective Date and carry out the Plan and to effectuate the Distributions provided for thereunder.

**L.    Post-Confirmation Status Report**

Unless the Effective Date has already occurred, within 120 days of the entry of the Confirmation Order, the Reorganized Debtor shall file a status report with the Bankruptcy Court explaining what progress has been made toward the Effective Date of the confirmed Plan. The status report shall be served on the U.S. Trustee, the Advisory Board and/or Creditors' Committee, and those parties who have requested special notice post-Confirmation. Further status reports shall be filed every 120 days and served on the same entities until the Effective Date.

**M.**     **Escrows**

All escrows previously established in this Chapter 11 Case and still in existence on the Effective Date shall continue in effect, be administered, and the escrowed funds released, according to their terms and any orders of the Bankruptcy Court previously entered.

**N.**     **Binding Effect**

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan and all exhibits thereto shall bind the Committee, the Lender, the Exit Lender, HCFFA, JNESO, Local 68, CMS, and all Holders of Claims.

**O.**     **Dissolution of the Creditors' Committee**

Upon the Effective Date, the Creditors' Committee shall be dissolved, and employment of the Creditors' Committee's Professionals and the members of the Creditors' Committee shall be released of all of their duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case, other than for purposes of filing and/or objecting to applications for final Fee Applications filed in the Chapter 11 Case.

**P.**     **Good Faith**

Confirmation of the Plan shall constitute a finding that:  (i) this Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) the solicitation of acceptances or rejections of this Plan by all Entities has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS

## AND UNEXPIRED LEASES

**A.    Assumption of Executory Contracts and Unexpired Leases**

Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, the Debtor shall be deemed to have rejected each pre-petition executory contract and unexpired lease to which it is a party unless such executory contract or unexpired lease (a) was previously assumed, assumed and assigned, or rejected upon motion by a Final Order, (b) previously expired or terminated pursuant to its own terms; (c) is listed on the Schedule of assumed contracts and leases, attached hereto as Schedule 1, or (d) is the subject of any pending motion, including to assume, to assume on modified terms, to reject or to make any other disposition filed by the Debtor on or before the Confirmation Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365(a) of the Bankruptcy Code approving the assumption and/or assignment of prepetition executory contracts and unexpired leases described above, as of the Effective Date.

Notwithstanding the foregoing, the Debtor and Reorganized Debtor expressly reserves the right to assume any executory contract or unexpired lease for an additional thirty (30) days after the Effective Date.

**B.    Assignment of Executory Contracts and Unexpired Leases**

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned pursuant to this Plan shall

remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty condition renewal or extension or modify any term or condition upon any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

## C.    Cure Rights for Executory Contracts and Unexpired Leases Assumed Under Plan

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order by the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that the Debtor or Reorganized Debtor, as applicable, shall be authorized to reject any executory contract or unexpired lease to the

extent the Debtor or Reorganized Debtor, in the exercise of their sound business judgment, conclude that the amount of the Cure obligation as determined by such Final Order, renders assumption of such executory contract or unexpired lease unfavorable to the Debtor or Reorganized Debtor.

**D.**     **Rejection of Executory Contracts and Unexpired Leases**

The contracts and leases set forth on Schedule 1 attached hereto shall be deemed assumed as of the Effective Date. The Debtor reserves the right, at any time prior to the Effective Date, except as otherwise specifically provided in the Plan, to seek to reject any executory contract or unexpired lease to which the Debtor is a party and to file a motion requesting authorization for the rejection of any such executory contract or unexpired lease.

If the rejection of an executory contract or unexpired lease pursuant to the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or Reorganized Debtor or the properties of any of them unless a Proof of Claim is filed with the claims agent and served upon counsel to the Reorganized Debtor within thirty (30) days after entry of the Confirmation Order. The foregoing applies only to Claims arising from the rejection of an executory contract or unexpired lease; any other Claims held by a party to a rejected contract or lease shall have been evidenced by a Proof of Claim filed by earlier applicable Bar Date or shall be barred and unenforceable.

**E.**     **Assumption of Utility Service Agreements**

In the event that there is in effect between the Debtor and any utility immediately prior to the Effective Date, with respect to any operating facility of the Debtor, any utility

service agreement or related agreement providing a reduced rate to the Debtor, which agreement has not been previously assumed, rejected or terminated, but is considered to be an executory contract, such agreement shall be deemed to be assumed pursuant to section 365 of the Bankruptcy Code and Article VIII.A of the Plan; provided, however, that no Cure shall be owed with respect to any such agreement, and in the event that a utility asserts any Cure, at the election of the Debtor such utility's agreement shall not be deemed assumed and shall instead be deemed rejected pursuant to section 365 of the Bankruptcy Code under the Plan.

**F.**     **Assumption of Governmental Licenses**

In the event that any license granted to the Debtor by a governmental unit, and in effect immediately prior to the Effective Date, is considered to be an executory contract and is not otherwise terminated or rejected by the Debtor, such license shall be deemed to be assumed and assigned to the Reorganized Debtor pursuant to section 365 of the Bankruptcy Code and Article VIII.A of the Plan.

**G.**     **Treatment of Compensation and Benefit Programs**

Except to the extent (i) otherwise provided for in the Plan, (ii) previously assumed or rejected by an order of the Bankruptcy Court entered on or before the Confirmation Date, (iii) the subject of a pending motion to reject filed by the Debtor on or before the Confirmation Date, or (iv) previously terminated, all employee compensation and benefit programs of the Debtor in effect during the pendency of the Chapter 11 Case, including all health and welfare plans, 401(k) plans, pension plans within the meaning of Title IV of the Employee Retirement Income Security Act of 1974, as amended, and all benefits subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or

after the Petition Date and in effect during the pendency of the Chapter 11 Case, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed and assigned pursuant to section 365 of the Bankruptcy Code and Article VIII.A of the Plan. Nothing contained herein shall be deemed to modify the existing terms of such employee compensation and benefit programs, including, without limitation, the Debtor's and the Reorganized Debtor's rights of termination and amendment thereunder.

**H.    Continuing Obligations Owed to Debtor**

(a) Any confidentiality agreement entered into between the Debtor and any supplier of goods or services requiring the parties to maintain the confidentiality of each other's proprietary information shall be deemed to be, and shall be treated as though it is, an executory contract that is assumed and assigned pursuant to section 365 of the Bankruptcy Code and Article VIII.A of the Plan.

(b)    Any indemnity agreement entered into between the Debtor and any supplier of goods or services requiring the supplier to provide insurance in favor of the Debtor, to warrant or guarantee such supplier's goods or services, or to indemnify the Debtor for claims arising from the goods or services shall be deemed to be, and shall be treated as though it is, an executory contract that is assumed and assigned pursuant to section 365 of the Bankruptcy Code and Article VIII.A of the Plan.

(c)    Continuing obligations of third parties to the Debtor under insurance policies, contracts, or leases that have otherwise ceased to be executory or have otherwise expired on or prior to the Effective Date, including, without limitation, continuing obligations to pay insured claims, to defend against and process claims, to refund premiums or overpayments, to provide indemnification, contribution or reimbursement,

to grant rights of first refusal, to maintain confidentiality, or to honor releases, shall continue and shall be binding on such third parties notwithstanding any provision to the contrary in the plan, unless otherwise specifically terminated by the Debtor or by order of Bankruptcy Court.

(d)    To the extent any insurance policy under which the insurer has a continuing obligation to pay the Debtor or a third party on behalf of the Debtor is held by the Bankruptcy Court to be an executory contract, such insurance policy shall be treated as though it is an executory contract that is assumed pursuant to section 365 of the Bankruptcy Code and Article VIII.A of the Plan.  Any and all Claims (including Cure) arising under or related to any insurance policies or related insurance agreements that are assumed by the Debtor prior to or as of the Effective Date: (i) shall not be discharged; (ii) shall be Allowed Administrative Claims; and (iii) shall be paid in full in the ordinary course of business of the Reorganized Debtor as set forth in Article II.B of the Plan.

## I.    Limited Extension of Time to Assume or Reject

(a)    In the event of a dispute as to whether a contract or lease is executory or unexpired, the right of the Debtor or the Reorganized Debtor to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract or lease is executory or unexpired.

(b)    In the event the Debtor or the Reorganized Debtor becomes aware after the Confirmation Date of the existence of an executory contract or unexpired lease that was not included in the Schedules, the right of the Reorganized Debtor to move to assume or reject such contract or lease shall be extended until the date that is thirty (30)

days after the date on which the Debtor or the Reorganized Debtor becomes aware of the existence of such contract or lease.

**J.      Post-Petition Contracts and Leases**

The Debtor shall not be required to assume or reject any contract or lease entered into by the Debtor after the Petition Date. Any such contract or lease shall continue in effect in accordance with its terms after the Effective Date, unless the Debtor or Reorganized Debtor has obtained a Final Order of the Bankruptcy Court approving rejection or other termination of such contract and lease.

**K.      Treatment of Claims Arising From Assumption or Rejection**

All Allowed Claims for Cure arising from the assumption of any executory contract or unexpired lease shall be treated as Administrative Claims pursuant to Article II.B of the Plan; all Allowed Claims arising from the rejection of an executory contract or unexpired lease shall be treated, to the extent applicable, as General Unsecured Claims, unless otherwise ordered by Final Order of the Bankruptcy Court; and all other Allowed Claims relating to an executory contract or unexpired lease shall have such status as they may be entitled to under the Bankruptcy Code as determined by Final Order of the Bankruptcy Court.

**ARTICLE IX**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.      Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court, Distributions on account of those Claims that are Allowed as of the Effective Date and are entitled to receive Distributions under the Plan, shall be made by the Reorganized

56

Debtor or the Creditor Trustee on the Initial Distribution Date and on such subsequent Distribution Dates as set forth in the Plan. However, Claims held by creditors who are also a defendant or proposed defendant in an Avoidance Action shall be treated as Disputed Claims and shall receive no Distribution until such Avoidance Action has been fully resolved. Distributions on account of Claims that become Allowed after the Effective Date shall be made on the next subsequent Distribution Date, in each case without interest. Notwithstanding anything herein to the contrary, funds contained in the Administrative Claims/Priority Claims Account and the Professional Fees Account may not be commingled or used for the payment of any Allowed Claim other than (i) Allowed Administrative Claims and Allowed Priority Claims with respect to the Administrative Claims/Priority Claims Account and (ii) Allowed Professional Fee Claims with respect to the Professional Fees Account. After payment of the Allowed Administrative Claims, Allowed Priority Claims and Allowed Professional Fee Claims, as the case may be, in accordance with the Plan, all of the remaining funds in the Administrative Claims/Priority Claims Account and the Professional Fees Account shall be and revested in the Reorganized Debtor free and clear of all Claims.

At the close of business on the Distribution Record Date, the claims register for all Claims shall be closed, and there shall be no further changes in the record holders of such Claims. Except as provided herein, the Debtor, Reorganized Debtor, the Creditor Trustee and each of their respective agents, successors, and assigns shall have no obligation to recognize any transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims register as of the close of business on the

Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Entities on the date of such Distributions.

**B.    Distributions; Causes of Action**

If, as a result of the pursuit of any Causes of Action, a Claim would arise from a recovery pursuant to section 550 of the Bankruptcy Code after Distributions under the Plan have commenced, the Reorganized Debtor and/or the Creditor Trustee shall be permitted to reduce the recovery by an amount that reflects the value of the treatment that would have been accorded to the Claim under the Plan, thereby effectively treating the Claim through the reduction.

Upon the disbursement of the entire proceeds Creditor Trust, the Reorganized Debtor and/or Creditor Trustee shall file a report with the Bankruptcy Court and request the entry of a Final Decree closing the Debtor's Chapter 11 Case.

**C.    Manner of Payment**

Any payment of Cash made under the Plan may be made either by check drawn on a domestic bank, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor or Creditor Trustee.

The Reorganized Debtor and/or Creditor Trustee, in making Distributions under the Plan, shall comply with applicable tax withholding and reporting requirements imposed by any governmental unit, and all Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor and Creditor Trustee, may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides the Reorganized Debtor and Creditor Trustee with the necessary information to comply with any reporting and withholding

requirements of any governmental unit. Any funds so withheld will then be paid by the Reorganized Debtor or Creditor Trustee to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor or Creditor Trustee, as the case may be, the information necessary to comply with any reporting and withholding requirements of any governmental unit within thirty (30) days from the date of first notification by the Reorganized Debtor to the Holder of such Allowed Claim about the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with Section IX.E below.

**D.**      **Transmittal of Distributions to Parties Entitled Thereto**

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or as provided in the Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail, upon compliance by the Holder with the provisions of the Plan, to (a) the latest mailing address Filed for the Holder of an Allowed Claim entitled to a Distribution, (b) the latest mailing address Filed for a Holder of a Filed power of attorney designated by the Holder of such Claim to receive Distributions, (c) the latest mailing address Filed for the Holder's transferee as identified in a Filed notice served on Debtor pursuant to Bankruptcy Rule 3001(e), or (d) if no such mailing address has been Filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

### E.    Disputed Claims and Unclaimed Property

Notwithstanding all references in the Plan to Claims that are Allowed, in undertaking the Pro Rata calculations concerning Allowed Claims under the Plan, including the determination of the amount of Distributions due to the Holders of Allowed Claims, each Disputed Claim shall be treated as if it were an Allowed Claim, as appropriate, except that if the Bankruptcy Court estimates the portion of a Disputed Claim to be Allowed or otherwise determines the amount which would constitute a sufficient reserve for a Disputed Claim (which estimations and determinations may be requested by the Reorganized Debtor or Creditor Trustee), such amount as determined by the Bankruptcy Court shall be used as to such Claim.

The Distributions due in respect of Disputed Claims based on the calculations required by the Plan shall be reserved for the Holders of the Disputed Claims and deposited into the account or trust. The amount so deposited on behalf of a Creditor holding a particular Disputed Claim is referred to herein as the "Reserve Amount."

After an objection to a Disputed Claim is withdrawn or determined by Final Order, the Distributions due on account of any resulting Allowed Claim shall be paid by the Reorganized Debtor and/or Creditor Trustee from the Reserve Amounts for such Creditor held in the account or trust together with the interest, if any, actually accrued on the Reserve Amounts (up to a maximum of the interest actually accrued on the amount of the resulting Allowed Claim). Such payment shall be made on the next Subsequent Distribution Date. No interest shall be due to a Disputed Claim holder based on the delay attendant to determining the allowance of such Claim except as set forth in this subsection.

Should the Distribution on account of any Allowed Claim of such Creditor exceed the Reserve Amount, the shortfall may be paid from available sums, if any, for the next Distribution, provided that, in no event shall the Creditor have recourse to any payments already made to others or to sums reserved by the Reorganized Debtor and/or Creditor Trustee in connection with the account or trust or for ongoing fees and costs of administering Debtor's Estate or effectuating the Plan.

After an objection to such a Disputed Claim is sustained in whole or in part by a Final Order, any Reserve Amounts for such Claim held in the respective account or trust in excess of the Distributions due on account of any resulting Allowed Claim may be removed by the Reorganized Debtor and/or Creditor Trustee from the respective Reserve Fund and treated as available funds for ongoing costs and fees and Distributions.

At the election of the Reorganized Debtor and/or Creditor Trustee, any property, which is unclaimed for ninety (90) days after Distribution thereof by mail to the last known mailing address of the party entitled thereto, shall revest in the Reorganized Debtor, as available funds for ongoing costs and fees, and/or Creditor Trustee. Notwithstanding the foregoing, if any mail sent to a Creditor at the last known mailing address by the Reorganized Debtor and/or Creditor Trustee, is returned without a forwarding address and the Creditor does not Claim its Distribution within ninety (90) days after it is mailed to the Creditor, the Reorganized Debtor and/or Creditor Trustee shall strike the Creditor's Claim from the Creditor list, issue no more checks to such Creditor and, for the purposes of future Distributions, treat the Creditor's Claim as if it were Disallowed.

**F.**    **Setoffs**

The Reorganized Debtor and/or Creditor Trustee, may, but shall not be required to, setoff against any Claim, and the payments and/or Distribution of other property to be made under the Plan in respect of such claim, any Claims of any nature whatsoever Debtor may have against the Holder of a Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver by Debtor, Reorganized Debtor and/or Creditor Trustee of any such claim the held against such Holder.

**G.**    **Saturday, Sunday or Legal Holiday**

If any payment, Distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**H.**    **Fractional Cents**

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded-down to the nearest whole cent when and as necessary).

**I.**    **Corporate Action**

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the corporate structure of the Debtor shall be deemed to be authorized and approved without any requirement of further action by Debtor, Debtor's shareholders, Debtor's board of directors, and/or the Reorganized Debtor.

**J.    De Minimis Payments and Distributions**

Notwithstanding any other provision of this Plan, de minimis payments of less than $250 need not be made by the Reorganized Debtor or Creditor Trustee on account of any Allowed Claim; provided that such de minimis payments that would otherwise be made on the Initial Distribution Date or a subsequent Distribution Date shall carry over until the next date of a Distribution until the cumulative amount of Distributions to which the Holder of such Allowed Claim is more than $250, at which time the cumulative amount of such Distributions shall be paid to such Holder. De minimis payments that will not be distributed as of the final Distribution Date shall be treated as undeliverable Distributions as provided in Article IX.E above.

Notwithstanding any other provision of this Plan, if and to the extent that the Creditor Trust has Assets including Cash with a value of no more than $5,000 after a Distribution has been made, the Creditor Trustee may, in lieu of making further Distributions, donate such Cash to a nonprofit organization or organizations that are exempt pursuant to section 501(c) of the Internal Revenue Code (Title 26 of the United States Code); provided that any donations made pursuant to this provision shall be made to a nonprofit organization or organizations that perform or fund community-based services.

## ARTICLE X

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**A.    Prosecution of Objections to Claims**

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as set forth in the Plan, the Debtor, Reorganized Debtor and/or Creditor Trustee,

and their respective professionals and shall have the exclusive right to make and File objections to any Claims.

The Debtor, Reorganized Debtor and/or Creditor Trustee, shall have until ninety (90) days following the Effective Date to File objections to the applicable filed or scheduled proofs of Claim filed prior to the Effective Date; provided, however, that the Debtor, Reorganized Debtor and/or Creditor Trustee, may apply to the Bankruptcy Court for an extension of such deadline for cause.

Except as set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that Debtor had immediately prior to the commencement of this Chapter 11 Case or the Effective Date, against or with respect to any Claim. Except as set forth in the Plan, upon Confirmation, the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that Debtor had immediately prior to the Effective Date or prior to the commencement of this Chapter 11 Case as if this Chapter 11 Case had not been commenced.

**B.    Estimation of Claims**

The Debtor and Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor and Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at

any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Reorganized Debtor, as the case may be, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

### C.    **Cumulative Remedies**

All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as such Claim becomes an Allowed Claim, such Claim shall be treated as a Disputed Claim for purposes related to allocations, Distributions, and voting under the Plan.

### D.    **Payments and Distributions on Disputed Claims**

On the Effective Date, the Reorganized Debtor shall establish a fund, the Creditor Trust, for maintenance and distribution in accordance with the Plan; provided, however, that all payments and Distributions shall be in accordance with the terms of this Plan.

On the Distribution Dates, the Reorganized Debtor and/or Creditor Trustee shall transfer and maintain for each respective Account such amounts of Cash the Reorganized Debtor shall determine to be necessary to retain on that Distribution Date on account of the Disputed Claims for which the respective Account is established. In determining the

amount of Cash to contribute to each respective Account, Reorganized Debtor and/or Creditor Trustee shall be entitled to rely upon the estimation, if any, of any Disputed Claims pursuant to the Plan to determine the amount of Cash so reserved, without objection by the Holder of the Disputed Claim. As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid first from the respective Account corresponding to such Disputed Claim and second from the remaining funds, if any, in the possession of the Reorganized Debtor and/or Creditor Trustee, until such time that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan. Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Reorganized Debtor and/or Creditor Trustee, a Creditor who holds both (an) Allowed Claim(s) and (a) Disputed Claim(s) will not receive a Distribution, nor accrue interest thereon, until such dispute is resolved by settlement or Final Order.

**E.**     **Allowance of Claims**

Except as expressly provided in the Plan, no Claim shall be deemed Allowed by virtue of the Plan, Confirmation, or entry of the Confirmation Order, unless and until such Claim is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in this Chapter 11 Case allowing such Claim.

**F.**     **Controversies Concerning Impairment**

If a controversy arises as to whether any Claims or any Class of Claims are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall

determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Bankruptcy Court's interpretation of the Plan shall govern.

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONFIRMATION

## OF THE PLAN AND ACHIEVING THE EFFECTIVE DATE

**A.**   **Condition Precedent to Confirmation**

Before the Effective Date may occur, the following conditions precedent must occur:

(1)   The Confirmation Order shall approve in all respects all of the provisions, terms and conditions of the Plan; and

(2)   the proposed form of the Confirmation Order is satisfactory in form and substance to each of the Debtor, the Committee, the Lender, the Secured Lender and the Exit Lender.

**B.**   **Conditions Precedent to Achieving the Effective Date**

Before the Effective Date may occur, the following conditions precedent must occur:

(1)   The Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for this Chapter 11 Case by the Clerk of the Bankruptcy Court in form and substance acceptable to Debtor, Lender, and the Creditors' Committee;

(2)   The Confirmation Order shall be a Final Order;

(3)     The Debtor and Reorganized Debtor shall have consummated the Exit Facility and the documents evidencing and the Exit Facility shall have been executed and delivered by the respective parties thereto and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived;

(4)     The Debtor shall have established the Creditor Trust;

(5)     The JNESO Nurses Unit CBA shall have been duly executed by the respective parties;

(6)     The JNESO Technical Unit CBA shall have been duly executed by the respective parties;

(7)     The Local 68 CBA shall have been duly executed by the respective parties;

(8)     The CMS Extended Repayment Plan shall have been memorialized and any necessary documents shall have been duly executed by the respective parties and shall be acceptable to the Exit Lender;

(9)     Any and all balance due under the DIP Credit Agreement and the Secured Lender Claim have been paid in full;

(10)     On or before the Effective Date, any and all defaults of the Debtor, NJHCFFA, or both, as may be applicable, with respect to the Master Trust Indenture, the 2007 Bonds, the Second Supplemental Indenture, the First Pre-Petition Loan Documents, the Second Pre-Petition Loan Documents, the State Contract, and the Bond Resolution (all such capitalized terms in this Article V(E)(6) having those meanings defined in Article II(C)(1)), shall have been cured, except that NJHCFFA shall have accepted the treatment offered under the Plan to Class 4;

(11)    On or within three (3) months of the Effective Date, in connection with the cures described in Article V(E)(6) above, all outstanding fees and costs of The Bank of New York Mellon in connection with the Debtor's Chapter 11 case shall have been paid in full, however, the Debtor's payment of such fees and costs of The Bank of New York Mellon shall be capped at $150,000; and

(12)    all material actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

The Debtor, with the consent, not to be unreasonably withheld or delayed, of the Creditors' Committee, the Lender, the Secured Lender and the Exit Lender may waive any of the conditions of the Confirmation and/or the Effective Date of the Plan, in whole or in part, set forth in Article XI of the Plan at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than the conditions set forth herein.

## C.    Effect of Non-Occurrence of Conditions to Achieving the Effective Date

If the Confirmation Order is vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against the Debtor, the Committee, the Lender, the Secured Lender and the Exit Lender; (b) prejudice in any manner the rights of Debtor, the Committee, the Lender, the Secured Lender or the Exit Lender, or (c) constitute an admission, acknowledgment, offer or undertaking by Debtor, the Committee, the Lender, the Secured Lender or the Exit Lender in any respects.

**D.**     <u>**Notice of Effective Date**</u>

On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtor shall File with the Bankruptcy Court a "Notice of Effective Date" in a form reasonably acceptable to the Lender and Committee, which notice shall constitute appropriate and adequate notice that this Plan has become effective, provided, however, that the Debtor shall have no obligation to notify any Entity other than counsel to the Committee and Lender of such fact. The Plan shall be deemed effective as of 12:01 a.m., prevailing Eastern Time, on the Effective Date specified in such filing. A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid to those Entities who have Filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

**ARTICLE XII**

**EFFECT OF ACHIEVING THE EFFECTIVE DATE**

**A.**     <u>**Vesting Of Assets**</u>

As of the Effective Date, all property of Debtor shall be free and clear of all Claims, Liens and other interests, except for Liens preserved by the Exit Lender as security for the Exit Facility. As of the Effective Date, except for those Liens preserved by the Exit Lender as security for the Exit Facility or as otherwise specifically provided in the Plan, all mortgages, deeds of trust, Liens or security interests in any property of the Estate will be released and all the right, title and interest of any Holder of any such mortgages, deeds of trust, Liens or security interests shall be canceled, annulled, terminated and become null and void. Debtor and Reorganized Debtor shall be authorized to act as attorney-in-fact for any such Holder to cause all public records to

properly reflect and effectuate this provision. If the Confirmation Order is ever reversed or revoked, this provision of the Plan shall become null and void, and all Liens existing before the Confirmation Date shall be revived.

**B.**     *Discharge of Claims Against the Debtor and the Reorganized Debtor*

On the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, the Confirmation of this Plan shall as of the Effective Date: (i) discharge the Debtor, the Reorganized Debtor and any of their Assets from all Claims demands, liabilities and other debts that arose on or before the Effective Date, including, without limitation, all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (A) a Proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code, (C) a Claim based on such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the Holder of a Claim based on such debt has accepted this Plan; and (ii) preclude all Entities from asserting against the Debtor, the Reorganized Debtor or any of their Assets any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141 of the Bankruptcy Code. The discharge provided in this provision shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim.

**C.**     *Injunction Related to the Discharge*

Except as otherwise provided in this Plan or the Confirmation Order, all Entities that have held, currently hold or may hold Claims or other debts or liabilities against the

*Debtor or other right of an equity security Holder in any or all of the Debtor that are discharged pursuant to the terms of this Plan are permanently enjoined, on and after the Effective Date, from taking any of the following actions on account of any such Claims, debts, liabilities, interests or rights: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim debt, liability, interests or rights other than to enforce any right to a Distribution or other right pursuant to this Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award decree or order against the Debtor, the Reorganized Debtor or any of their Assets on account of any such Claim debt, liability, or right; (iii) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, the Reorganized Debtor or any of their Assets on account of any such Claim debt liability, or right; (iv) asserting any right of setoff subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor, the Reorganized Debtor or any of their Assets on account of any such Claim debt, liability, or right; and (v) commencing or continuing any action in any manner, in anyplace that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order. Such injunction shall extend to any successor of the Debtor, the Reorganized Debtor and any of their Assets. Any entity injured by a willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages from the willful violator.*

**D.**    ***Preservation of Rights of Action by the Debtor and the Reorganized Debtor***

*Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with this Plan, in accordance*

with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, the Reorganized Debtor, shall retain and may enforce, and shall have the sole right to enforce, any claims, demands, rights and Causes of Action that the Debtor or Estate may hold against any Entity, as appropriate. The Reorganized Debtor, and its successors and assigns, may pursue such retained claims, demands, rights or Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor holding such claims, demands, rights or Causes of Action. Further, the Reorganized Debtor retain their rights to file and pursue, and shall have the sole right to file and pursue any adversary proceedings against any account debtor related to debit balances or deposits owed to the Debtor.

**E.**     **Limitation of Liability**

Except as expressly set forth in the Plan, on and after the Effective Date, neither the Debtor, nor its successors or assigns, including the Reorganized Debtor, the members of the Committee, the Lender, the Secured Lender and the Exit Lender, nor any of their respective past and present officers, directors, employees, members, agents, representatives, shareholders, attorneys, accountants, financial advisors, investment bankers, lenders, consultants, experts, and Professionals and agents for the foregoing shall have or incur any liability for, and are expressly exculpated and released from, any claim (as defined in section 101(5) of the Bankruptcy Code) or any past or present actions taken or omitted to be taken under or in connection with, related to, effecting, or arising out of the following: (i) the Debtor's and/or Reorganized Debtor operations after the Petition Date; (ii) this Chapter 11 Case; (iii) the post-petition administration of the Debtor's Cash, Assets, and real and personal property; (iv) the pursuit of Confirmation;

(v) the formulation, preparation, dissemination, implementation, administration, confirmation, or achieving the Effective Date of the Plan and the Disclosure Statement; (vi) the sale and liquidation of the Assets (including the prosecution of Causes of Action), or the property to be distributed under the Plan; (vii) any other act taken or omitted to be taken in connection with the Debtor's business after the Petition Date; (viii) any acts or omissions taken by the Creditor Trustee or his Professionals in exercising their responsibilities under the Plan or Creditor Trust Agreement; or (ix) any contract, instrument, release, or other agreement entered into or created in connection with the foregoing; except only for actions or omissions to act to the extent determined by a court of competent jurisdiction (in a Final Order) to be by reason of such party's gross negligence, willful misconduct, or fraud, and in all respects, such party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; it being expressly understood that any act or omission with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation.

**F.** **Injunction**

Except as otherwise expressly provided in the Plan, all Entities that have held, hold or may hold Claims against the Debtor and Reorganized Debtor are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtor, their Estate, Reorganized Debtor, the Committee, the Professionals, Lender, Secured Lender, Exit Lender, their respective past and present officers, directors, employees, members, agents, representatives, shareholders, attorneys,

accountants, financial advisors, investment bankers, lenders, consultants, experts, and Professionals and agents for the foregoing, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date, including, without limitation: (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (iv) asserting any right of setoff against any obligation, debt or liability due to the Debtor. Except as expressly provided herein, the Debtor and Reorganized Debtor, expressly reserve all rights and defenses that the Debtor may have (including, without limitation, the rights of subrogation and recoupment) with respect to any obligation, debt or liability allegedly due to any Entity.

By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth herein.

**G.    Release of Liens**

Except as otherwise expressly provided in this Plan or in any contract, instrument, indenture or other agreement or document expressly incorporated by reference in this Plan, upon the occurrence of the Effective Date, the Confirmation Order shall release any and all Liens other than as otherwise provided in this Plan; *provided, however,* that this provision *shall not* release Exit Lender Liens and shall not prevent Liens from attaching to the Reorganized Debtor's Assets as provided for by this Plan and the Exit Facility.

In addition, notwithstanding anything contained herein or in the Plan to the contrary, the liens of Bank of New York Mellon, NJHCFFA, or both, as the case may be,

pursuant to, *inter alia*, the Master Indenture and other indenture documents, the First Pre-Petition Loan Documents, the Second Prepetition Loan Documents, and the Final Financing Order, shall be preserved in full. For the avoidance of all doubt, the Master Indenture and all other indenture documents, and the Debtor's obligations thereunder, survive Confirmation.

## H.     Terms of Existing Injunctions or Stays

Unless otherwise provided herein, all injunctions or stays provided for in this Chapter 11 Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. The Plan and Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released or enjoined pursuant to the Plan.

### ARTICLE XIII

### RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, this Chapter 11 Case having been closed, or Final Decree having been entered, the Bankruptcy Court shall have jurisdiction of matters arising out of, and related to this Chapter 11 Case and the Plan under, and for the purposes of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

A.     allow, disallow, determine, liquidate, classify, estimate or establish the priority or status of any Claim, including the resolution of any request for payment of any

Administrative Claim or Priority Tax Claim and the resolution of any and all objections

to the allowance or priority of Claims;

B.      grant or deny any applications for allowance of compensation or

reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for

periods ending on or before the Effective Date;

C.      resolve any matters related to the assumption, assumption and assignment,

or rejection of any executory contract or unexpired lease to which the Debtor is a party or

with respect to which the Debtor may be liable and to hear, determine and, if necessary,

liquidate, any Claims arising therefrom;

D.      ensure that Distributions to Holders of Allowed Claims are accomplished

pursuant to the provisions of the Plan, including ruling on any motion or objection Filed

pursuant to the Plan;

E.      decide or resolve any motions, adversary proceedings, contested or

litigated matters and any other matters and grant or deny any applications involving any

or all of the Debtor or their affiliates, directors, employees, agents or Professionals that

may be pending on the Effective Date;

F.      enter such orders as may be necessary or appropriate to implement or

consummate the provisions of the Plan and all contracts, instruments, releases, indentures

and other agreements or documents created in connection with the Plan or the Disclosure

Statement;

G.      resolve any cases, controversies, suits or disputes that may arise in

connection with achieving the Effective Date, interpretation or enforcement of the Plan,

or any Entity's obligations incurred in connection with the Plan, including, among other

77

things, any avoidance actions or subordination actions under sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code;

H.    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with achieving the Effective Date or enforcement of the Plan, except as otherwise provided herein;

I.    resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article XII and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

J.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

K.    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

L.    enter an order and/or Final Decree concluding this Chapter 11 Case;

M.    to consider any modification of the Plan under section 1127 of the Bankruptcy Code and/or modification of the Plan before "substantial consummation" as defined in section 1101(2) of the Bankruptcy Code;

N.    to protect the property of the Estate from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of the Plan, or to determine a Debtor's

exclusive ownership of claims and Causes of Action retained or otherwise dealt with under the Plan;

O.    to hear and determine matters pertaining to abandonment of property of the Estate;

P.    to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

Q.    to interpret, enforce and address any and all issues relating to any Orders, including without limitation all sale orders entered in this Chapter 11 Case pursuant to section 363 of the Bankruptcy Code, previously entered in this Chapter 11 Case to the extent such Orders are not superseded or inconsistent with the Plan;

R.    to recover all Assets of Debtor and property of the Estate wherever located;

S.    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 345, 505, and 1146 of the Bankruptcy Code.

T.    to hear and act on any other matter not inconsistent with the Bankruptcy Code;

U.    to consider and act on the compromise and settlement of any litigation, Claim against or cause of action on behalf of the Estate;

V.    to interpret and enforce the injunctions contained in the Confirmation Order and Plan; and

W.    to approve the sale of assets held by the Pennington Property Trust.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

**A.**    **Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C § 1930 as determined by the Bankruptcy
Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or
before the Effective Date.  The Reorganized Debtor shall pay fees that accrue under 28
U.S.C § 1930 until a Final Decree is entered in their respective cases, or the Bankruptcy
Court otherwise orders.  The Reorganized Debtor shall submit U.S. Trustee quarterly fee
status reports with each quarterly fee paid after Confirmation.

**B.**    **Modification of Plan**

The Debtor reserves to itself, in accordance with the Bankruptcy Code, the right
to amend or modify the Plan prior to the entry of the Confirmation Order.  However, in
certain instances, the Bankruptcy Court may require a new disclosure statement and/or
revoking the Plan.

Prior to entry of the Confirmation Order, the Plan may only be modified by the
Debtor subject to the consent of the Lender, Secured Lender, Exit Lender, and the
Committee (such consent not to be unreasonably delayed or withheld).  After the entry of
the Confirmation Order, and subject to the consent of the Lender, Secured Lender, Exit
Lender, and the Committee (such consent not to be unreasonably delayed or withheld),
Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify the
Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect
or omission or reconcile any inconsistency in the Plan in such manner as may be
necessary to carry out the purpose and intent of the Plan, if (a) the Plan has not been

substantially consummated and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

## C.    **Plan Supplement**

Certain documents, agreements, instruments, schedules and exhibits and forms thereof specified herein and which are to be filed pursuant to this Plan and/or the Disclosure Statement filed in connection herewith, shall be filed as a Plan Supplement, which shall be filed with the Bankruptcy Court no later than five (5) calendar days prior to the hearing on the adequacy of the Disclosure Statement and which shall be updated no later than ten (10) calendar days prior to the Confirmation Hearing.  Unless otherwise expressly provided in the Plan or Disclosure Statement, the Plan Supplement and any document contained therein may be altered, restated, modified or replaced from time to time, including subsequent to the filing of any such documents.

## D.    **Revocation of Plan**

The Debtor reserves the right, to the extent provided under the Bankruptcy Code, to withdraw the Plan at any time before substantial consummation of the Plan if any of the following events occur:  (a) the Confirmation Order is not entered by **[February __, 2010]**; (b) the Effective Date does not occur by [_____ __, **2010]**; (c) The Effective Date of the Plan is not substantially achieved by [_____ __, **2010]**; or (d) the Confirmation Order is reversed or revoked, then, in each case at the option of Debtor, subject to the consent of the Lender, Secured Lender, Exit Lender, and the Creditors' Committee (such consent not to be unreasonably delayed or withheld), the Plan shall be deemed null and void.  In any of those events, nothing contained in the Plan shall be deemed to constitute a waiver of any claim by the Debtor, Creditors' Committee,

Lender, Secured Lender, or Exit Lender, to prejudice in any manner the rights of the Debtor, Committee, Lender, Secured Lender, or Exit Lender in any further proceedings involving the Debtor, Committee, Lender, Secured Lender, or Exit Lender.

**E.      Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Entity.

**F.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  The filing of the Plan, the statements or provisions contained therein, or the taking of any action by the Debtor, Committee, Lender, Secured Lender, or Exit Lender with respect to the Plan shall not be, or shall not be deemed to be, an admission or waiver of any rights of the Debtor, Committee, Lender, Secured Lender, or Exit Lender with respect to the Holders of Claims prior to the Effective Date.

**G.      Post-Confirmation Effectiveness of Proofs of Claims**

Proofs of Claims shall, upon the Effective Date, represent only the right to participate in the Distributions contemplated by the Plan (to the extent the claims set forth in such Proofs of Claims are Allowed) and otherwise shall have no further force or effect.

**H.      Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in this Chapter 11 Case under sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

### I.    Further Assurances

Debtor, Reorganized Debtor and all Holders of Claims receiving Distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### J.    Entire Agreement

The Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of the Plan.

### K.    Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of this Chapter 11 Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

### L.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the internal laws of the State of New Jersey shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to the conflict of laws provisions of the State of New Jersey.

**M.**    **Headings**

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner shall affect the provisions or interpretation(s) of the Plan.

**N.**    **Notices**

Any pleading, notice or other document required by the Plan to be served on or delivered to Debtor shall be sent by first class U.S. mail, postage prepaid to:

To Debtor:

   St. Mary's Hospital
   350 Boulevard
   Passaic, New Jersey 07055
   Attn: Michael J. Sniffen, President and CEO

With copies to:

   Drinker Biddle & Reath LLP
   500 Campus Drive
   Florham Park, New Jersey 07932
   Attn:  Robert K. Malone
     Michael P. Pompeo
   Counsel for the Debtor-in-Possession

To Lender:

   Healthcare Finance Group, Inc
    and Related Affiliates
   c/o Day Pitney
   200 Campus Drive
   Florham Park, New Jersey 07932
   Attn: Richard M. Meth

With Copies to:

   Kaye Scholer LLP
   425 Park Avenue
   New York, New York 10022
   Attn:  Benjamin Mintz
   Counsel to Lender, Secured Lender and Exit Lender

To the Committee:

> Porzio Bromberg & Newman P.C.
> 100 Southgate Parkway
> P.O. Box 1997
> Morristown, New Jersey 07962
> Attn: Warren J. Martin, Jr.
>     Brett S. Moore
> Counsel to the Committee

To NJHCFFA:

> NJHCFFA
> P.O. Box 366
> Trenton, New Jersey 08625-0366
> Attn: Mark E. Hopkins, Exec. Director

With Copies to:

> Capehart & Scatchard
> Laurel Corporate Center
> Suite 300S
> 8000 Midlantic Drive
> Mt. Laurel, New Jersey 08054
> Attn: Alan P. Fox

**O.**    **Filing of Additional Documents**

On or before the Effective Date, Debtor may File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**P.**    **Enforceability**

Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

**Q.**    **Severability**

The provisions of the Plan shall not be severable unless such severance is agreed to by Debtor (with the consent of the Lender and the Committee, such consent not to be

unreasonably delayed or withheld), and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

## R.    Notice of Default under the Plan

Unless otherwise agreed, no default shall be declared under the Plan unless any payment or performance due under the Plan (other than a payment required on the Effective Date) shall not have been made or deemed made thirty (30) calendar days after written notice of the default is received by Debtor and Reorganized Debtor. Any notice of default as provided for in the Plan or in any exhibit to the Disclosure Statement shall (a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of the default, including a reference to the specific provisions of the Plan as to which a default or defaults have allegedly occurred; and (c) describe any action required to cure the default, including the exact amount of any payment required to cure such default, if applicable.

## S.    Investments

Reorganized Debtor shall be permitted from time to time to invest all or a portion of the Cash contained in any of the Reserve Funds in securities issued or directly guaranteed by the United States government or any agency thereof, commercial paper of corporations rated at least "A-1" by Standard & Poor's Corporation or rated at least "P-1" by Moody's Investor Services, Inc., interest bearing certificates of deposit, time deposits, bankers' acceptances and overnight bank deposits, and repurchase agreements.

## T.    Reliance

The Reorganized Debtor and its respective agents, employees and professionals, while acting in their capacity as such, including but not limited to, objecting to Claims,

86

making Distributions to Creditors holding allowed Claims and approving settlement of actions, as the case may be, shall be permitted to reasonably rely on any certificates, sworn statements, instruments, reports, claim dockets, schedules, or other documents reasonably believed to be genuine and to have been prepared or presented by the Bankruptcy Court Clerk's Office, the Debtor, and the Debtor's professionals.

Dated: December 17, 2009

St. Mary's Hospital, Passaic, N.J.

By: _____
           Michael J. Sniffen
           President and CEO